**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Michael Edward KENNEDY,**
**Defendant-Appellant.**

**No. 80–1218.**

United States Court of Appeals,
Ninth Circuit.

May 8, 1980.

Juanita R. Brooks, Federal Defenders of San Diego, Inc., San Diego, Cal., for defendant-appellant.

Thomas M. Coffin, Asst. U. S. Atty. (on the brief), Michael H. Walsh, U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before HUG, ALARCON and NELSON, Circuit Judges.

PER CURIAM:

Defendant Kennedy brings this emergency appeal from the District Court's order denying him bail. He argues that the District Court improperly applied the provisions of 18 U.S.C. § 3148, which controls the granting of bail in cases in which the defendant "is charged with an offense punishable by death." Kennedy is charged with offenses that under existing statutory language are "punishable by death," but Kennedy points out that *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), forbade the imposition of the death penalty under such statutes.[1] He therefore

1. *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), addressed specifically a Georgia death penalty statute, but federal courts confronting analogous federal statutes have concluded that their provisions for the

argues that the District Court should have applied the standards of § 3146, which governs release of those charged with an offense "other than an offense punishable by death."

*Furman*, however, rendered unconstitutional only the penalties that could be exacted under certain statutes. It did not necessarily have the effect of invalidating all statutes that were tied to the concept of a "capital" case. If the statute's purpose derives from the nature of the offense with which the defendant is charged and not from the potential severity of the punishment, it remains in effect. *United States v. Watson*, 496 F.2d 1125, 1128 (4th Cir. 1973). We find that § 3148 is such a statute and we therefore hold that the District Court properly applied it in denying defendant's motion for bail.

### Statement of Facts

Defendant Kennedy is presently charged with first-degree murder, felony murder in the first degree, and rape within the special territorial jurisdiction of the United States. The District Court found that there was substantial evidence that the defendant, in his capacity as a Federal Protective Officer, enticed a young female illegal alien into accompanying him and that he subsequently raped and murdered her. Evidence introduced below suggested that Kennedy once failed to appear for an FBI investigatory interview and left a note indicating he was going across the border. In addition, the District Court found that the defendant wore firearms regularly even when off duty at his home. The District Court concluded that the defendant was a substantial flight risk and that no conditions of release would reasonably assure that the defendant would not pose a danger to any other person. Evidence in the record supports both conclusions.

### The Legal Issue

When the Supreme Court declared imposition of the death penalty unconstitutional under statutes like those with which the defendant is charged, it did not necessarily intend to strike down all the statutes that were tied to the concept of a "capital" case.[2] In *United States v. Watson*, 496 F.2d 1125 (4th Cir. 1973), the Fourth Circuit found that *Furman* did not deprive defendants charged with offenses punishable by death before *Furman* of the right to have two lawyers represent them. In *United States v. Martinez*, 536 F.2d 886 (9th Cir. 1976), we held that such defendants did not have a right to 20 peremptory challenges under Fed.R.Crim.P. 24(b), but observed that our holding was not inconsistent with *Watson*.

In reaching our conclusion that defendants did not have a right to 20 peremptory challenges, we reasoned that the purpose of this rule was to assure that a jury was not tainted by opinions about capital punishment, 536 F.2d at 890, and that it therefore did not apply in cases in which capital punishment was no longer possible. In looking to the purpose underlying the rule, we engaged in the same kind of analysis as the Fourth Circuit undertook in *Watson*, when it concluded that the rule that a defendant charged in a capital case have two attorneys remained in effect because the offenses that were subject to the death penalty with typically complex and therefore difficult to try. *United States v. Watson*, 496 F.2d at 1128.[3]

Several state courts have found statutes denying bail to defendants charged with

imposition of the death penalty were unconstitutional in light of *Furman*, because of the unfettered discretion given the sentencing authority. *United States v. Kaiser*, 545 F.2d 467, 471 (5th Cir. 1977); *United States v. Watson*, 496 F.2d 1125, 1126 (4th Cir. 1976).

**2.** We note that the California Supreme Court explicitly addressed the question whether it was striking down such peripheral statutes when it invalidated a California capital punishment statute. It held that those statutes concerning bail in "capital" cases were directed towards the gravity of the underlying offense and thus remained in effect, even though statutes providing for capital punishment did not. *People v. Anderson*, 6 Cal.3d 628, 657 n.45, 100 Cal.Rptr. 152, 171 n.45, 493 P.2d 880 (1972).

**3.** We point to *Watson* because we endorse its mode of analysis. We express no opinion on the appropriateness of its application of this mode of analysis to the facts of that case.

capital offenses did not survive *Furman.* In these cases, the state courts found that the statutes had been enacted because it had been thought that most defendants facing a possible death penalty would likely flee regardless of what bail was set, but that those facing only a possible prison sentence would not if bail were sufficiently high. Using analysis similar to that which we employed in *Martinez,* they concluded that because it was the nature of the penalty itself that led to treating defendants in capital cases differently from others, these statutes should no longer apply when the penalty could not be applied. *State v. Johnson,* 61 N.J. 351, 294 A.2d 245, 250 (1972); *Commonwealth v. Truesdale,* 449 Pa. 325, 296 A.2d 829, 835 (1972); *Ex Parte Contella,* 485 S.W.2d 910 (Tex.Cr.App.1972).

The statute we face in this case, however, is different. Section § 3148 allows a court to conclude that no condition of release will assure a defendant's appearance at trial *or prevent him from posing a danger to others.* By contrast, § 3146—the statute governing bail in the case of offenses not punishable by death—does not look at the potential dangerousness of the defendant at all. It requires that the defendant be released pending trial on his personal recognizance or on the execution of an unsecured appearance bond, unless the court determines that such a release will not reasonably assure the appearance of the defendant at trial. The court can then condition release on one or a combination of enumerated conditions to assure the appearance of the defendant, such as placing restrictions on his travel, associations, or place of abode. When the risk of flight was sufficiently great, courts have denied bail altogether under § 3146. *E. g., United States v. Abrahams,* 575 F.2d 3, 8 (1st Cir. 1978); *see United States v. Melville,* 306 F.Supp. 124, 127 (S.D.N.Y.1969) ("While the statute, § 3146(a), does not say this in so many words, it has been thought generally that there are cases in which no workable set of conditions can supply the requisite reasonable assurance of appearance for trial.").

Thus, the principal difference between § 3148 and § 3146 is that the court is allowed to consider dangerousness to others under the former but not under the latter. When Congress enacted § 3148, it must have concluded that when there was substantial evidence that the defendant had committed a crime then punishable by death, such as rape or murder, the defendant posed a danger to others sufficiently great to warrant a court to consider it in deciding whether to release a defendant before trial. It seems to have imposed different bail conditions on those charged with "capital" crimes because the underlying *offense* was different, not because the potential *penalty* was different. The reasons for allowing a court to consider the dangerousness of the defendant exist regardless of whether the death penalty can be imposed.

### Conclusion

We find that the specific treatment of "capital" cases in § 3148 derives from the nature of the offense charged and not the nature of the penalty. For this reason, we hold that § 3148 survived *Furman* and was properly applied by the District Court in this case. Therefore, the order of that Court is

AFFIRMED.