UNITED STATES of America

v.

Mutulu SHAKUR, a/k/a "Doc," a/k/a "Jeral Wayne Williams," Sekou Odinga, a/k/a "Nathaniel Burns," a/k/a "Mgabasi," a/k/a "Mugubasi," a/k/a "Eddie Holmes," a/k/a "Lou," Cecil Ferguson, a/k/a "Mo," a/k/a "Chui," Edward Lawrence Joseph, a/k/a "Edward Lawrence," a/k/a "Jamal," a/k/a "Tony," a/k/a "J.R.," William Johnson, a/k/a "Bilal Sunni-Ali," a/k/a "Spirit," Silvia Baraldini, a/k/a "Louise," Susan Rosenberg, a/k/a "Elizabeth," Cheri Dalton, a/k/a "Nahanda," Iliana Robinson, a/k/a "Naomi," Nilse Cobeo, a/k/a "Nilse Lawrence," a/k/a "Ginger," a/k/a "Gigi," a/k/a "Giovanni Correa," and Alan Berkman, Defendants.

No. SSS 82 Cr. 0312 (KTD).

United States District Court,
S.D. New York.

March 29, 1983.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for Government; Robert S. Litt, Stacey J. Moritz, Asst. U.S. Attys., of counsel.

Sekou Odinga, pro se.

Jesse Berman, New York City, for defendant Cecil Ferguson.

William Mogulescu, New York City, for defendant Edward Joseph.

Chokwe Lumumba, Lynn Stewart, New York City, for defendant William Johnson.

Susan Tipograph, New York City, for defendant Sylvia Baraldini.

Lawrence Stern, New York City, for defendant Iliana Robinson.

Robert Bloom, New York City, for defendant Alan Berkman.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Two questions have arisen in connection with the makeup of the jury which will try this case. The government requests by motion that the jury be an "anonymous" jury. The defendants not only resist the notion of an anonymous jury but insist that they are entitled pursuant to 18 U.S.C. § 3432 to a listing of the names and addresses of all prospective jurors prior to trial.

Section 3432 of Title 18 provides in pertinent part: "A person charged with treason or other capital offense shall at least three entire days before commencement of trial be furnished with ... a list of the veniremen ... stating the place of abode of each venireman...." The defendants argue that the provisions of this section apply to the trial of this case in view of the charges contained in the indictment under § 2113(e) of Title 18. Section 2113(e) provides:

Whoever, in committing any offense defined in this section or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person shall be imprisoned not less than ten years, or punished by death if the verdict of the jury shall so direct.

To bolster their argument the defendants point out that the prosecution already has argued that this case is a capital case. The United States Attorney, at an initial bail-setting hearing urged: "I mention the fact that it is a death penalty case because in fact the Court would be authorized, since it is a death penalty case, to deny bail altogether even though the death penalty itself might not be constitutional...." Transcript of May 18, 1982 Proceedings Before Judge Weinfeld at 37. This argument was later continued by the prosecution team actually trying this case: "I think that it can be understood that a capital case is a case for which the statute authorizes the death sentence, even if the death sentence cannot currently be imposed under constitutional standards." Transcript of November 8, 1982 Proceedings Before Judge Weinfeld at 7.

The prosecution now maintains that this is not a capital case because the government is not seeking the death penalty for any of the defendants. Indeed, the prosecution has conceded that under present interpretations of the Constitution "the Government does not seek the death penalty or cannot because the statutory scheme is unconstitutional." Letter of Assistant United States Attorney ("AUSA") Robert S. Litt dated March 15, 1983.

My review of the applicable case law on the subject leads me to the conclusion that Section 3432 of Title 18 U.S.C. is inapplicable to the present situation. The safeguards which Congress set up for capital cases are restricted to those situations in which the death penalty is sought. *United States v. Trapnell,* 638 F.2d 1016, 1029–30 (7th Cir.1980); *United States v. Freeman,* 380 F.Supp. 1004 (D.N.D.1974), *aff'd,* 514 F.2d 171 (8th Cir.1975).

In the *Freeman* case the Court was presented with exactly the argument made here:

Then the question remains: Since this is by statutory language a capital crime, is the Defendant still entitled to the special privileges attendant to conviction of a capital crime, even though the death penalty cannot be imposed? Again, the answer is: No.

The clear purpose of these provisions in the statutes and the rules is to assure an adequate defense for one threatened with capital punishment, and to assure, by enlarging the procedures of jury selection, a jury not tainted by opinions about capital punishment. Since capital

punishment is no longer a problem, the safeguards are no longer needed.

Therefore,

It is ordered, that:

1. The conditions of 18 U.S.C. § 3432 shall not apply.

2. The provisions of Rule 24(b), Fed. R.Crim.P., providing for 20 peremptory challenges, shall not apply.

3. Special instructions relating to capital crimes, and, in particular, a special verdict grounded on 18 U.S.C. § 1111(b) shall not be presented to the jury.

*Id.* at 1006.

The fact that the government here has argued in the bail hearing that this is a capital case is not inconsistent with its present position nor with my ruling herein. Section 3148 of Title 18 U.S.C. dealing with the denial of bail in capital cases "derives from the nature of the offense charged and not the penalty." *United States v. Kennedy*, 618 F.2d 557, 559 (9th Cir.1980). Thus, I find no inconsistency and will follow the rule of *Freeman.*

 I now turn to the government's motion for an anonymous jury. The government is not requesting that the jury be sequestered mainly because of the length of the trial. The government now predicts that it will take about four and one-half months for its direct case. This estimate is based in part on the fact that the government is in possession of over 3,000 hours of taped electronic surveillance. I would suspect that there will be some defense case, although it may take less than two weeks. Still this amounts to maintaining a jury for five months. Taking a juror from his or her home and family for five months is difficult for everyone involved, and in my mind must be a last resort. That is not to say that I will not sequester all the participants in this trial should the occasion arise, but that is a situation which hopefully will not arise.

I turn then to a determination as to whether the government has shown that an anonymous jury is appropriate in this situation. First, the prosecution points to the indictment which charges crimes of violence. The evidence, it is claimed, will include descriptions of the murders of four persons and also recorded conversations in which the defendants discuss killing two government witnesses. There has been produced a "Wanted—Dead or Alive" poster with a picture of another government witness which was printed by a group closely associated with one of the defendants. Apparently this poster has had wide circulation. In parallel proceedings (certainly not in my courtroom) there has been reference to witnesses as "war criminals." A handwritten exhortation prepared by associates of one of the defendants has been found which states in part:

We should also considered new tactics— for example, a campaign that targeted individual U.S. Attorneys or grand jurors and holds them accountable for the impact of their actions. This type of campaign can be taken to their neighborhoods and places of work, as well as to other areas where we are organizing, and can serve to demoralize these agents of imperial strategy.

Affidavit of AUSA Moritz, Exhibit E. This document refers to the grand jury which returned the instant indictment.

The government has recommended that the jurors be rendered anonymous by: (1) voir dire of potential jurors limited so that no venireman's name, address, or place of employment is disclosed; (2) the Marshal taking the jury to lunch as a group; and (3) the Marshal taking the jurors "to an undisclosed central location, from which they can leave for their respective communities." Affidavit of AUSA Moritz at 2.

The defendants argue that this type of jury selection "compromises [their] right to a fair trial under the Sixth Amendment of the United States Constitution and ... inte[r]feres with [their] right to be represented effectively by counsel in the selection of a jury." Response of Lynne F. Stewart, Esq., dated March 19, 1983. An anonymous jury selection procedure has already been approved by the Court of Ap-

**4**

peals for this Circuit. *United States v. Barnes*, 604 F.2d 121, 133–43 (2d Cir. 1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). The defendants seek to distinguish this case from *Barnes* because that involved a "large narcotics case," Response of Iliana Robinson at 1, and there had been a "sordid history" of jury tampering in large narcotics cases in this district. Affidavit of William Mogulescu at ¶ 4.

In *Barnes*, the Second Circuit cited two factors warranting the use of an anonymous jury. First, the case had generated much pretrial publicity; and second, allegations of dangerous and unscrupulous conduct abounded. 604 F.2d at 141. Because these circumstances were present, the court recognized, an anonymous jury often could have a greater chance of being impartial because " 'the anonymous juror feels less pressure' "—whether it be from defendants, friends of the defendants, friends of the victims, the press, or whomever. *Id.*

The instant case also has generated substantial pretrial publicity. In *Barnes*, Judge Werker used 150 veniremen. 604 F.2d at 135. Here the jury commissioner has summoned a special panel of 1,000 veniremen. It is unclear whether in *Barnes* there were any disclosed threats to witnesses. 604 F.2d at 136–37. Here, the government has asserted there are tape recordings of the defendants discussing doing away with two prosecution witnesses. The "Wanted—Dead or Alive" poster for another government witness indicates that there may be a real possibility of danger to trial participants.

In the face of this the defense argues that the "government's motion is based on lies, innuendo and political slander. There is no supported claim that any juror would be threatened or intimidated by the defense or their supporters in any manner." Affidavit of Susan Tipograph at ¶ 2. Such a showing is not required. "It can be no answer that no untoward event had occurred up to the opening of trial.... Cases need not be cited to prove the adage

of the futility of locking the barn door after the horse has escaped." *Barnes*, 604 F.2d at 137.

The defense also suggests that they will be unable to select a jury if denied the venireman's name, address, and place of employment. This argument was raised *in extenso* in *Barnes* and its refutation is found there. *See generally* 604 F.2d at 137–43, and the cases cited therein. It is true that the defendants will be unable to get the exact jury they want. That is not required by the law. And in any event, the one recorded situation in American literature known to the Court in which a party got exactly the jury he wanted—he lost. *See* S. BENET, *The Devil and Daniel Webster*, THIRTEEN O'CLOCK (1937).

The first part of the government's motion is granted. The second and third government requests will be decided at trial. The Marshal shall make such arrangements for lunch and transportation as I will from time to time direct.

SO ORDERED.