**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

LEONARD HUGH FULLER,
          *Defendant-Appellant.*

No. 07-30114

D.C. No.
CR 06-0146 EJL

OPINION

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted
January 9, 2008—Seattle, Washington

Filed July 8, 2008

Before: Andrew J. Kleinfeld, A. Wallace Tashima, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tashima

8147

**COUNSEL**

Tracy A. Staab, Assistant Federal Defender, Spokane, Washington, for the defendant-appellant.

Nancy D. Cook, Assistant United States Attorney, Coeur d'Alene, Idaho, for the plaintiff-appellee.

**OPINION**

TASHIMA, Circuit Judge:

Defendant-appellant Leonard Fuller was convicted of possession of an identification document that appears to be made

by or under the authority of the United States which is stolen or produced without lawful authority, in violation of 18 U.S.C. § 1028(a)(6). On this appeal, we must decide whether, in a prosecution under § 1028(a)(6), the government must prove that the identification document in question appeared to be issued by a real agency of the United States. We hold that the government does not; consequently, we affirm Fuller's conviction.

## JURISDICTION

The district court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## BACKGROUND

The parties do not dispute the facts. Fuller, on his way to Canada, stopped at the Eastport, Idaho, Port of Entry. Fuller told the United States Customs and Border Protection ("CBP") officers that he was an off-duty law enforcement officer and asked whether he could store his weapon at the Port of Entry while he was in Canada. Because Canada forbids weapons from entering its country, the Port of Entry had a practice of storing guns owned by law enforcement officers who were entering Canada.

Before agreeing to store Fuller's weapon, CBP officers asked to view Fuller's law enforcement credentials, and Fuller obliged. His credentials consisted of a leather wallet (to which was affixed a metal badge in the shape of a star embossed with an eagle and enclosed within a circle carrying the words "Special Response Agent") and an identification card in the wallet. The front of the identification card carried the headline, "United States Special Response Department Anti-Terrorism Unit." The same eagle seal found on the metal star appears on the left side of the identification card. The middle of the card contains the name "L. Fuller" on one line and

"Commander" on the next line below. A photo of Fuller appears on the right side of the card.[1]

Because CBP officers had never seen similar credentials, they were suspicious and photocopied it and Fuller's driver's license for a follow-up investigation into the authenticity of the credentials. One of the officers asked Fuller what department the Special Response Department was a part of and Fuller responded, "the State Department," adding that the Special Response Department might be transferred to a different department. The CBP officers returned Fuller's credentials and driver's license to him and took custody of his weapon. Fuller departed, telling the officers that he would return in a week.

Before Fuller returned, CBP officers contacted the State Department and learned that Fuller was not an employee of the State Department and that no "Special Response Department" existed within the State Department. When Fuller returned to Eastport to retrieve his weapon, he was detained and subsequently indicted for possessing a false identification document in violation of 18 U.S.C. § 1028(a)(6).

The indictment alleged:

> On or about July 12, 2006, within the District of Idaho, the Defendant, **LEONARD HUGH FULLER**, did knowingly possess an identification document that was or appeared to be an identification document of the United States, to wit: a United States Special Response Department Anti-Terrorism

---

[1]The reverse side of the card carries the following oath:

I, acting as an agent of the United States Special Response Department, promise to uphold the integrity of the Constitution of the United States. My priority as an agent is to act in bravery to protect the United States citizens against criminal injustice and to ensure due processing of our justice system.

Unit Special Agent Identification card, in the name of L. Fuller, Commander, which document was stolen or produced without lawful authority, knowing that such document was stolen or produced without such authority, in violation of Title 18, United States Code, Section 1028(a)(6).

Prior to trial, Fuller moved to dismiss the Indictment for failure to allege a necessary element, specifically, that the identification document "appears to be issued by or under the authority of the United States." Fuller argued that this required the government to prove that the identification document purports to be issued from a real agency of the United States. The district court denied Fuller's motion to dismiss.

At trial, Fuller requested a jury instruction requiring the jury to find beyond a reasonable doubt that the identification document at issue purported to be from a real agency. The district court noted Fuller's objection to the jury instruction that was given, but refused to give his alternative instruction.

Fuller also moved for a judgment of acquittal, arguing that there was insufficient evidence to prove that the document he possessed appeared to be "made or issued under the authority of the United States . . . in other words a 'real government agency' not one that a person made up.' " According to Fuller, because "there is no evidence that the 'United States Special Response Department Anti-Terrorism Unit' has at any time ever been a real agency[,] [t]he identification document in this case does not violate the statute of Indictment, and [an acquittal] is proper[.]"

The jury found Fuller guilty and the district court denied his renewed motion for judgment of acquittal. Fuller was thereafter sentenced and filed a timely notice of appeal.

## STANDARD OF REVIEW

We review *de novo* the denial of a motion to dismiss an indictment based on an interpretation of a federal statute. *United States v. Hermoso-Garcia*, 413 F.3d 1085, 1088 (9th Cir. 2005). We also review *de novo* whether a jury instruction misstates elements of a statutory crime. *United States v. Phillips*, 367 F.3d 846, 854 (9th Cir. 2004); *United States v. Knapp*, 120 F.3d 928, 930 (9th Cir. 1997).[2] Fuller's sufficiency of the evidence challenge is also reviewed *de novo* because "although [Fuller] frames his argument in terms of sufficiency of evidence, the real issue turns on interpretation of the statute[.]" *United States v. Smith*, 795 F.2d 841, 845 (9th Cir. 1986).

## ANALYSIS

[1] Fuller argues that the indictment and jury instruction were defective because they did not include the element that the identification document purport to be from a real agency,

---

[2]The government contends that Fuller failed to object to the district court's jury instruction and, therefore, that we should review the instruction only for plain error. *See United States v. Perez*, 116 F.3d 840, 846 (9th Cir. 1997) (en banc). Assuming *arguendo* that Fuller failed to object with the required specificity, we "recognize 'a sole exception to the requirement of a formal, timely, and distinctly stated objection' when a proper objection would be a 'pointless formality.' " *United States v. Klinger*, 128 F.3d 705, 710 (9th Cir. 1997) (quoting *United States v. Kessi*, 868 F.2d 1097, 1102 (9th Cir. 1989)). "A proper objection would be a 'pointless formality' if: (1) 'throughout the trial the party argued the disputed matter with the court'; (2) 'it is clear from the record that the court knew the party's grounds for disagreement with the instruction'; and (3) the party proposed an alternate instruction." *Id.* (quoting *Kessi*, 868 F.2d at 1102). Here, (1) Fuller disputed the elements of the offense repeatedly throughout the trial, as well as pretrial; (2) the record is clear that the district court understood Fuller's disagreement with the jury instruction; and (3) Fuller proposed an alternate instruction. We, therefore, reject the government's argument and review the challenge to the jury instruction *de novo*. *See id.*

and he argues that there was insufficient evidence for a rational trier of fact to find beyond a reasonable doubt that the document appeared to be issued by a real agency. Fuller's challenges to the indictment, the jury instruction, and the sufficiency of the evidence, therefore, all turn on his legal theory of § 1028(a)(6), presenting a statutory construction issue of first impression. *See United States v. Cannan*, 48 F.3d 954, 962 (6th Cir. 1995) (noting the defendant's argument that there was insufficient evidence to convict him under § 1028(a)(6) because the document he possessed was from a defunct law enforcement agency but not deciding whether § 1028(a)(6) requires the document to purport to be issued by a real agency).

"Statutory construction always starts with the language of the statute itself." *Mitchell v. United States (In re Mitchell)*, 977 F.2d 1318, 1320 (9th Cir. 1992). In engaging in the textual analysis of the relevant statutory provisions, we "read the words of a statute in their context and with a view to their place in the overall statutory scheme." *Student Loan Fund of Idaho, Inc. v. U.S. Dep't of Educ.*, 272 F.3d 1155, 1165 (9th Cir. 2001) (internal quotation marks omitted).

A.   *The Statute*

Enacted in 1982 as part of the False Identification Crime Control Act, 18 U.S.C. § 1028(a)(6) provides:

> (a)   Whoever, in a circumstance described in subsection (c) of this section—

> (6) knowingly possesses an identification document or authentication feature that is or appears to be an identification document or authentication feature of the United States or a sponsoring entity of an event designated as a special event of national significance which is stolen or produced without lawful

authority knowing that such document or feature was stolen or produced without such authority;

. . .

Shall be punished as provided in subsection (b) of this section.

Subsection (c) provides, in relevant part:

(c)   The circumstance referred to in subsection (a) of this section is that—

(1) the identification document, authentication feature, or false identification document is or appears to be issued by or under the authority of the United States or a sponsoring entity of an event designated as a special event of national significance or the document-making implement is designed or suited for making such an identification document, authentication feature, or false identification document[.]

18 U.S.C. § 1028(d)(3) defines the term "identification document":

(3) the term "identification document" means a document made or issued by or under the authority of the United States Government, a State, political subdivision of a State, a sponsoring entity of an event designated as a special event of national significance, a foreign government, political subdivision of a foreign government, an international governmental or an international quasi-governmental organization which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals[.]

Fuller advances two arguments why an identification document cannot appear to be made by or under the authority of the United States pursuant to §§ 1028(a)(6) and (d)(3), unless the document purports to be from a real agency.[3]

**[2]** First, Fuller argues that a document cannot appear to be "issued" from a federal agency unless the document purports to be from a real federal agency. We are not persuaded. All sorts of documents can appear to be made by or under the authority of the United States even though they purport to be documents produced by an agency that turns out to be non-existent. An identification badge or card which states that the holder is a judge on the United States Court of Appeals for the Twelfth Circuit could appear to be made by or issued under the authority of the United States even though the Twelfth Circuit does not exist. Likewise, an identification badge which states that the holder is the Director of the United States Federal Service could also appear to be made by or issued under the authority of the United States even though the Federal Service is not a real agency. The statute requires that the document *appear* to be made by or issued under the authority of the United States; it does not require that the document actually be made by or under the authority of the United States. Fuller's identification document states that he was a Commander in the United States Special Response Department. Admittedly, Fuller's identification document is suspect on its face, but whether the document appears to be made by or under the authority of the United States is a question of fact for the jury to determine.

Next, Fuller argues that even if the statutory language could be interpreted to proscribe the possession of identification documents that purport to be issued by a nonexistent govern-

---

[3]We note that in this case we are concerned only with the "of the United States" disjunctive clause of § 1028(a)(6) and not the disjunctive clause pertaining to "of . . . a sponsoring entity of an event designated as a special event of national significance."

mental entity, his construction is nevertheless supported by the fact that in other subsections of § 1028 Congress specifically included the alternatives, "identification document" and "false identification document," whereas in § 1028(a)(6) Congress specifically omitted the alternative, "false identification document." *Compare* 18 U.S.C. § 1028(a)(6) (proscribing knowing possession of identification documents that appear to be made by or under the authority of the United States), *with id.* § 1028(a)(1)-(4) (proscribing the knowing production of identification or false identification documents; proscribing the knowing transfer of identification or false identification documents; proscribing possession of identification or false identification documents with the intent to use unlawfully; and proscribing the knowing possession of identification or false identification documents with the intent to defraud the United States). Section 1028(d)(4) defines a "false identification document" as:

> [A] document of a type intended or commonly accepted for the purposes of identification of individuals that . . . is not issued by or under the authority of a governmental entity or was issued under the authority of a governmental entity but was subsequently altered for purposes of deceit; and . . . appears to be issued by or under the authority of the United States Government, a State, a political subdivision of a State, a sponsoring entity of an event designated by the President as a special event of national significance, a foreign government, a political subdivision of a foreign government, or an international governmental or quasi-governmental organization[.]

18 U.S.C. § 1028(d)(4).

Under Fuller's argument, the omission of "false identification document" from § 1028(a)(6) represents Congress' intent to proscribe only the knowing possession of documents that

appear to be issued from an actual government agency and to not proscribe the possession of documents not appearing to be issued by or under the authority of a real government entity.[4]

Fuller is, of course, correct that " 'where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " *Camacho v. Bridgeport Fin., Inc.*, 430 F.3d 1078, 1081 (9th Cir. 2005) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)); *see also Silvers v. Sony Pictures Entm't*, 402 F.3d 881, 885 (9th Cir. 2005) (en banc) ("The doctrine of *expressio unius est exclusio alterius* as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions." (internal quotation marks omitted)). "Understood as a descriptive generalization about language rather than a prescriptive rule of construction, the maxim [of *expressio unius*] usefully describes a common syntactical implication." *Longview Fibre Co. v. Rasmussen*, 980 F.2d 1307, 1313 (9th Cir. 1992). It "is a rule of interpretation, not a rule of law,"

---

[4]The Sixth Circuit faced a similar argument in *United States v. Gros*, 824 F.2d 1487 (6th Cir. 1987). In *Gros*, the defendant argued that subsection (a)(6) applied only to identification documents as defined by § 1028(d)(3), that is, documents actually issued by or under the authority of the United States. *Id.* at 1491. Under that view, mere possession of stolen authentic documents would be proscribed, but mere possession of counterfeit documents would not be. Because the documents in that case were blank counterfeit social security cards, the defendant in *Gros* argued that he could not be convicted of violating subsection (a)(6) because the documents were not issued by or under the authority of the United States. *Id.* The Sixth Circuit rejected that argument, concluding "that Congress could not have intended the first use of the term 'identification document' in subsection (6) to be identical to the second phraseology of subsection (6): 'identification document of the United States.' " *Id.* at 1491-92. In essence, the Sixth Circuit held, as we do, that subsection (a)(6) proscribes possession of identification and false identification documents. *Id.*

which we have explained is "properly applied only when it makes sense as a matter of legislative purpose." *Id.*

[3] Even though its phrasing is "somewhat awkward," the purpose of subsection (a)(6) is clear—to proscribe the knowing possession of documents that are commonly accepted for identification purposes and that appear to have been made by or under the authority of the United States.

[4] We therefore hold that in a prosecution under § 1028(a)(6), the government must prove two elements beyond a reasonable doubt:

> 1.  The defendant knowingly possessed a document of a type intended or commonly accepted for the purposes of identification of individuals and that document be or appear to be made by or under the authority of the United States; and

> 2.  The defendant knew that that document was stolen or produced without the authority of the United States.

With that in mind, we examine Fuller's challenges to the indictment, the jury instruction, and the conviction.

B.  *Indictment, Jury Instruction & Conviction*

[5] Fuller challenges the indictment and jury instruction because they failed to contain the element that "the identification document appeared to be issued by or under the authority of the United States," which he argues was a necessary element of the crime and requires the government to prove that the document purports to be issued by a real agency. Fuller's indictment contained two elements: (1) knowing possession of documents that were or appeared to be identification documents of the United States; and (2) that the defendant knew that the documents were stolen or produced without the

authority of the United States. Though the indictment does not charge that the document "appeared to be made by or under the authority of the United States," a document "of the United States" sufficiently connotes a document "made by or under the authority of the United States." Therefore, Fuller's challenge to the indictment fails because the indictment "contain[ed] the elements of the offense charged[,] and fairly inform[ed him] of the charge against which he [had to] defend, and . . . enable[d] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003).

**[6]** "[W]hen a jury instruction is challenged on appeal, our task is to determine whether the trial court's instruction relieved the state of this essential burden as to any individual element of the crime of which the defendant has been convicted." *United States v. Smith*, 520 F.3d 1097, 1102 (9th Cir. 2008) (citing *Medley v. Runnels*, 506 F.3d 857, 864 (9th Cir. 2007) (en banc)). As with the indictment, the language in the court's jury instruction—"was or appeared to be an identification document of the United States"—sufficiently captures the element that the identification document be issued by or under the authority of the United States, and thus the jury instruction did not relieve the state of its burden as to an element of the crime.

Finally, Fuller argues that the evidence was insufficient for a rational trier of fact to find beyond a reasonable doubt that the document at issue purported to be from an actual agency. Because that is not an element of the crime with which Fuller was charged, this challenge fails as well. *See Smith*, 795 F.2d at 846.

## CONCLUSION

Based on its text and purpose, we conclude that 18 U.S.C. § 1028(a)(6) has only two elements: (1) the defendant knowingly possessed a document of a type intended or commonly

accepted for the purposes of identification of individuals and that document be or appear to be made by or under the authority of the United States; and (2) the defendant had knowledge that the document was stolen or produced without the authority of the United States. Because the indictment charged these elements, the jury instruction properly described these elements, and a rational trier of fact could find that the government proved these elements beyond a reasonable doubt, the district court did not err in any of its challenged rulings. The judgment of the district court is

**AFFIRMED.**