**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

JAMES H. GALLAHER, JR.,
            *Defendant-Appellant.*

No. 09-30193

D.C. No.
2:05-cr-00224-
LRS-1

ORDER
AMENDING
OPINION AND
DENYING
PETITION FOR
REHEARING AND
SUGGESTION
FOR REHEARING
EN BANC AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Lonny R. Suko, Chief District Judge, Presiding

Argued and Submitted
March 5, 2010—Seattle, Washington

Filed June 2, 2010
Amended October 26, 2010

Before: A. Wallace Tashima, Raymond C. Fisher and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Fisher;
Dissent by Judge Tashima

17577

## COUNSEL

James A. McDevitt, United States Attorney, and Joseph H. Harrington (argued), Assistant United States Attorney, Spokane, Washington, for the plaintiff-appellee.

Stephen R. Hormel, Hormel Law Office, L.L.C., Spokane Valley, Washington, for the defendant-appellant.

## ORDER

The opinion filed June 2, 2010, slip op. 7809, and appearing at 608 F.3d 1109 (9th Cir. 2008), is amended as follows:

At slip op. 7820, line 4, the first full paragraph; 608 F.3d at 1114-15, the carryover paragraph, DELETE the following paragraph:

> A requirement that tribes opt in to the death penalty — and the unavailability of the death penalty in this particular case — does not reflect a legislative assessment that murder in Indian country is a less serious offense than other murders in federal enclaves. *See supra*, Section II. Regardless of the nexus to federal jurisdiction, "[i]n a very literal sense, the offense defined [in § 1111(b) ] is still a 'capital crime'; the statute still authorizes the imposition of the death penalty and Congress has not repealed it." *Manning*, 56 F.3d at 1196 (internal quotation marks and citation omitted) (alterations in original). The plain text of § 1111(b) mandates that we continue to categorize first degree murder as a crime punishable by death.

and REPLACE it with the following paragraph:

A requirement that tribes opt in to the death penalty — and the unavailability of the death penalty in this particular case — does not reflect a legislative assessment that murder in Indian country is a less serious offense than other murders in federal enclaves. *See supra*, Section II. Rather, "punishable by death" is a calibration of the seriousness of the crime as viewed by Congress, not of the punishment that could actually be imposed on the defendant in an individual case. Regardless of the nexus to federal jurisdiction, "[i]n a very literal sense, the offense defined [in § 1111(b)] is still a 'capital crime'; the statute still authorizes the imposition of the death penalty and Congress has not repealed it." *Manning*, 56 F.3d at 1196 (internal quotation marks and citation omitted) (alterations in original). The plain text of § 1111(b) mandates that we continue to categorize first degree murder as a crime punishable by death.

With this amendment, Judges Fisher and Berzon have voted to deny Gallaher's petition for panel rehearing and petition for rehearing en banc. Judge Tashima has voted to grant the petition for panel rehearing and recommended rehearing en banc.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petition for panel rehearing and the petition for rehearing en banc, filed June 24, 2010, are **DENIED.**

No further petitions for rehearing will be permitted.

**OPINION**

FISHER, Circuit Judge:

The Federal Death Penalty Act of 1994 conditionally elimi-
nated the death penalty for Native American defendants pros-
ecuted under the Major Crimes Act or the General Crimes
Act, subject to the penalty being reinstated by a tribe's gov-
erning body. *See* 18 U.S.C. § 3598. In 2005, a federal grand
jury indicted defendant-appellant James H. Gallaher, Jr., for
first degree murder, more than 14 years after he killed Edwin
Pooler on the Colville Indian Reservation in eastern Washing-
ton. Because the Confederated Tribes of the Colville Reserva-
tion have not reinstated the death penalty, Gallaher argues that
he is not subject to the death penalty and thus the five year
federal statute of limitations for noncapital crimes applies to
his offense. *See id.* §§ 3281-82. We disagree and hold that
first degree murder remains a capital offense, regardless of
whether capital punishment can be imposed in a particular
case.

I.

In April 1991, Gallaher lived on the Colville Indian Reser-
vation with Jennifer Clark, their baby daughter, W.L., and
Edwin Pooler. One day in mid-April, Pooler arrived home in
a drunken stupor and urinated on the floor of their shared
home. Urine splattered on W.L., and Clark later reported the
incident to Gallaher. Gallaher tracked down Pooler at a bar,
and the two men quarreled. Pooler returned home, and Gal-
laher told Pooler's friend L.J. that he was going home "to take
care of the problem." When Gallaher got home, he told Clark
to leave. After a brief absence, she returned and saw that Gal-
laher had Pooler in a "neck hold" and that Pooler had blood
around his mouth. Gallaher ordered her out of the house
again.

A short time later, Gallaher went to the neighboring home
where Clark had been waiting and demanded to borrow her

car. L.J. was there as well; Gallaher told him that he had killed Pooler by breaking his neck. Gallaher told L.J. that he had to help him dispose of the body or "he'd be next." The two men left the body in a nearby woods, and Gallaher and Clark moved to another town that night. Gallaher moved the body by himself a few additional times.

Fourteen years later, in December 2005, a federal grand jury indicted Gallaher for Pooler's murder in violation of §§ 1111(a), 1151 and 1153 of Title 18 of the United States Code. Gallaher soon moved for dismissal based on expiration of the statute of limitations. He argued that the five-year federal statute of limitations for noncapital crimes applied to his first degree murder indictment because he was not eligible for the death penalty under the Federal Death Penalty Act. The Act eliminates capital punishment for certain "person[s] subject to the criminal jurisdiction of an Indian tribal government . . . unless the governing body of the tribe has elected" otherwise. 18 U.S.C. § 3598. The district court denied the motion, concluding that first degree murder broadly remains "punishable by death." Gallaher unsuccessfully petitioned for mandamus and thereafter for certiorari. *See Gallaher v. U.S. Dist. Court*, No. 06-73909 (9th Cir. Dec. 6, 2006), *cert. denied*, 549 U.S. 1298 (2007). Eventually he conditionally pled to involuntary manslaughter and timely appealed. We have jurisdiction under 28 U.S.C. § 1291 and review de novo the denial of Gallaher's motion to dismiss. *See United States v. Fuller*, 531 F.3d 1020, 1024 (9th Cir. 2008).

## II.

The history of federal criminal jurisdiction over Native American crimes in Indian country is a story of expanding authority over America's "domestic dependent nations," *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 10 (1831). *See* Robert N. Clinton, *Development of Criminal Jurisdiction over Indian Lands: The Historical Perspective*, 17 Ariz. L. Rev. 951, 962 (1975); *see also* William C. Canby, Jr., *Ameri-*

*can Indian Law in a Nutshell* 148-52 (5th ed. 2009). In *Ex Parte Crow Dog*, the Supreme Court held that federal criminal statutes did not provide jurisdiction over crimes committed "in the Indian country by one Indian against the person or property of another Indian." 109 U.S. 556, 570-71 (1883). The Court noted that exercise of federal jurisdiction would "impose upon them the restraints of an external and unknown code" and would try Native Americans "not by their peers, nor by the customs of their people, nor the law of their land . . . ." *Id.* at 571; *see also Johnson & Graham's Lessee v. M'Intosh*, 21 U.S. (8 Wheat.) 543, 589 (1823) (noting the distinct "character and habits of the people whose rights have been wrested from them"). Despite these concerns, Congress soon thereafter passed the Major Crimes Act, which placed seven crimes committed by Indians in Indian country under federal jurisdiction. *See* Act of Mar. 3, 1885, § 9, 23 Stat. 362, 385 (codified as amended at 18 U.S.C. § 1153); *see also United States v. Kagama*, 118 U.S. 375 (1886) (upholding the Major Crimes Act against constitutional attack). "Congress has added other crimes over time," and in 2006 the number of enumerated offenses reached 15, ranging from murder to " 'felony child abuse or neglect.' " *United States v. Other Medicine*, 596 F.3d 677, 680 (9th Cir. 2010) (quoting 18 U.S.C. § 1153(a)); *see also Keeble v. United States*, 412 U.S. 205 (1973) (permitting conviction under the Major Crimes Act for lesser included offenses of the enumerated offenses). Federal prosecution of these crimes demonstrates a marked distinction between sovereignty retained by Native American tribes and police power retained by the states. Outside of Indian country, federal enclaves and federal maritime jurisdiction, none of these crimes is subject to federal prosecution, absent an additional nexus to interstate commerce or other federal authority.

In contrast to the expansive reach of criminal jurisdiction, federal law in other contexts has increasingly recognized the sovereignty of native tribes. Most broadly, the Supreme Court has established canons favoring native tribes in both statutory

and treaty interpretation. *See County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 247 (1985). The Court now requires that "[a]mbiguities in federal law [be] construed generously in order to comport with these traditional notions of sovereignty and with the federal policy of encouraging tribal independence." *White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 143-44 (1980). Similarly, the tribes are increasingly encouraged to play an active role in policing reservations, even if major crimes are still prosecuted in the federal courts. *See* Indian Self-Determination and Education Assistance Act of 1975, 25 U.S.C. § 450f; Stewart Wakeling et al., Nat'l Inst. of Justice, *Policing on American Indian Reservations* 5-11 (2001). To resolve the tension between expansive federal criminal jurisdiction and respect for Native American sovereignty, "ambiguous provisions in the [Major Crimes Act] must be interpreted in favor of the tribes." *United States v. Errol D., Jr.*, 292 F.3d 1159, 1164 (9th Cir. 2002).

[1] In 1994 Congress enacted the Federal Death Penalty Act, a provision of which delegated to tribal governments the decision whether the death penalty could be imposed by a federal court for certain offenses committed by Indians in Indian country. The relevant provision states in full:

> Notwithstanding [the Major Crimes Act or the General Crimes Act], no person subject to the criminal jurisdiction of an Indian tribal government shall be subject to a capital sentence under this chapter for any offense the Federal jurisdiction for which is predicated solely on Indian country (as defined in section 1151 of this title) and which has occurred within the boundaries of Indian country, unless the governing body of the tribe has elected that this chapter have effect over land and persons subject to its criminal jurisdiction.

18 U.S.C. § 3598; *see also* 137 Cong. Rec. S8488-03, S8491 (1991) (statement of Sen. Domenici) ("[T]his amendment

gives the Indian legislative bodies, their tribal councils, the authority to elect whether or not murder committed on their land by an Indian is subject to the death penalty or not . . . ."). According to one of the bill's sponsors, Congress aimed to "address Indian nations based upon their status as governments." 137 Cong. Rec. at S8490 (statement of Sen. Inouye).

The Federal Death Penalty Act places Native American tribes on an equal footing with states: they may decide whether or not ordinary first degree murder committed within their jurisdiction is punishable by death, even if first degree murders in Indian country are prosecuted in federal court. *See id.* at S8491 (statement of Sen. Domenici). *Compare also* Wash. Rev. Stat. 10.95.030(2) (providing for imposition of the death penalty in some cases of aggravated first degree murder), *with* Mich. Const. art. 4, § 46 ("No law shall be enacted providing for the penalty of death.").[1] The Act is part of a larger effort to provide the tribes a choice concerning harsher punishment options and to eliminate disparities between punishment for crimes committed in Indian country and prosecuted in federal court and crimes committed outside of federal enclaves and prosecuted in state court. *See* 18 U.S.C. § 3559(c)(6) (providing opt-in regime for federal three-strikes provision); *id.* § 5032 (providing opt-in regime for adult prosecution of juveniles for certain offenses). *See generally* U.S. Sentencing Comm'n, *Report of the Native American Advisory Group* 21-22, 32-33 (2003) (describing sentencing disparities and efforts to remedy them).

### III.

**[2]** The Confederated Tribes of the Colville Reservation

---

[1]What we call ordinary first degree murder stands in contrast with killings that are federal offenses regardless of where they are committed. *See, e.g.*, 18 U.S.C. § 1114(1) (murder of an officer or employee of the federal government).

have not elected to permit capital punishment for relevant Major Crimes Act enumerated crimes. It is therefore undisputed that first degree murder committed by a member of the Confederated Tribes on the Colville Reservation is not, as a practical matter, punishable by death. Thus, the question before us is whether that crime nonetheless remains subject to the federal statute of limitations for capital crimes.

**[3]** Two statutory provisions set the limitations periods for federal crimes. "An indictment for any offense *punishable by death* may be found at any time without limitation." 18 U.S.C. § 3281 (emphasis added). Under 18 U.S.C. § 3282, "except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." First degree murder within the territorial jurisdiction of the United States is ordinarily a capital crime. *See* 18 U.S.C. § 1111(b). Under the Major Crimes Act, Native Americans who commit murder within "Indian country" are ordinarily subject to "the same law and penalties as all other persons committing [murder] within the exclusive jurisdiction of the United States." *Id.* § 1153(a). However, the question is whether the conditional elimination of the death penalty for the crime charged in this case also eliminates its status as a capital offense subject to the unlimited statute of limitations.

The broad elimination of capital punishment without amendment to statutes defining and punishing individual crimes is not without precedent. After *Furman v. Georgia*, 408 U.S. 238 (1972), established a de facto moratorium on executions nationwide, we continued to categorize "offenses that under existing statutory language are 'punishable by death' " as capital crimes. *United States v. Kennedy*, 618 F.2d 557, 557 (9th Cir. 1980). Specifically, *Kennedy* held that designation as a capital crime addresses the seriousness of an offense, rather than merely the punishment available. *See id.* at 559. With regard to the procedural statutes that apply to

capital crimes, we held, "If the statute's purpose derives from the nature of the offense with which the defendant is charged and not from the potential severity of the punishment, it remains in effect." *Id.* at 558; *see also United States v. Watson*, 496 F.2d 1125, 1127 (4th Cir. 1973) (distinguishing between procedures that protect a defendant due to the "nature of the risks or complexities" of a capital trial and those related to "the nature of the offense as it affects society"). *Kennedy* applied this logic to bail and held that the federal bail statute for capital crimes continued to apply because Congress "must have concluded that when there was substantial evidence that the defendant had committed a crime then punishable by death, such as rape or murder, the defendant posed a danger to others sufficiently great to warrant" application of the bail statute for capital crimes, which uniquely addressed the dangerousness of the defendant. 618 F.2d at 558; *accord United States v. Kostadinov*, 721 F.2d 411 (2d Cir. 1983) (same).

On the other hand, after *Furman* we ceased applying some protections afforded to capital defendants. Where the purpose of a safeguard "is to reduce the chance that an innocent defendant would be put to death," elimination of the death penalty also eliminates the procedural right. *United States v. Steel*, 759 F.2d 706, 709-10 (9th Cir. 1985) (disclosure of government witness lists); *see also United States v. Goseyun*, 789 F.2d 1386, 1387 (9th Cir. 1986) (20 peremptory strikes); *United States v. Dufur*, 648 F.2d 512, 515 (9th Cir. 1980) (two defense attorneys). This accorded with precedent that had permitted district courts to withhold certain protections ordinarily applicable to capital cases after the federal government had certified that it would not seek the death penalty. *See United States v. Martinez*, 536 F.2d 886, 890 (9th Cir. 1976) (witness lists); *accord United States v. Maestas*, 523 F.2d 316, 319 (10th Cir. 1975) (same).

**[4]** "Like the [bail] statute in *Kennedy*, and unlike the [defendant-friendly procedural] statutes in *Dufur*, *Goseyun*,

and *Steel*, the statute of limitations provisions of sections 3281 and 3282 are inextricably tied to the nature of the offense." *United States v. Manning*, 56 F.3d 1188, 1196 (9th Cir. 1995). In other words, "whether a crime is 'punishable by death' under § 3281 or 'capital' under § 3282 depends on whether the death penalty may be imposed for the crime under the enabling statute, not 'on whether the death penalty is in fact available for defendants in a particular case.' " *United States v. Ealy*, 363 F.3d 292, 296-97 (4th Cir. 2004); *see also United States v. Helmich*, 521 F. Supp. 1246 (M.D. Fla. 1981) (finding that legislative intent to provide unlimited time to charge the most serious crimes is unrelated to actual availability of the death penalty). Because premeditated murder is generally punishable by death under federal law, the district court correctly applied an unlimited statute of limitations.

A requirement that tribes opt in to the death penalty — and the unavailability of the death penalty in this particular case — does not reflect a legislative assessment that murder in Indian country is a less serious offense than other murders in federal enclaves. *See supra*, Section II. Rather, "punishable by death" is a calibration of the seriousness of the crime as viewed by Congress, not of the punishment that could actually be imposed on the defendant in an individual case. Regardless of the nexus to federal jurisdiction, "[i]n a very literal sense, the offense defined [in § 1111(b)] is still a 'capital crime'; the statute still authorizes the imposition of the death penalty and Congress has not repealed it." *Manning*, 56 F.3d at 1196 (internal quotation marks and citation omitted) (alterations in original). The plain text of § 1111(b) mandates that we continue to categorize first degree murder as a crime punishable by death.

We also find unpersuasive Gallaher's attempt to carve out "murder in Indian country" as a distinct offense that is not punishable by death. The Major Crimes Act does not create specific crimes; it merely allows for the prosecution of sub-

stantive offenses defined elsewhere. *See Other Medicine*, 596 F.3d at 680 ("The statute is both jurisdictional and substantive but does not define the elements of the crimes it lists."); 18 U.S.C. § 1153(a) (providing that defendants "shall be subject to the same law and penalties as all other persons committing *any of the above offenses*, within the exclusive jurisdiction of the United States") (emphasis added); *id.* § 1153(b) (providing for use of state law to define "[a]ny offense referred to in subsection (a) of this section that is not defined and punished by Federal law"). Moreover, even if murder in Indian country were a distinct offense, capital punishment remains available if a tribe chooses to allow it.

Finally, Gallaher invokes the rule of lenity, but we do not find the rule applicable to this case. The Supreme Court has supplied two rationales for the rule of lenity:

> First, a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear. Second, because of the seriousness of criminal penalties, and because criminal punishment usually represents the moral condemnation of the community, legislatures and not courts should define criminal activity.

*United States v. Bass*, 404 U.S. 336, 348 (1971) (internal citations and quotation marks omitted). There is no concern regarding notice because Gallaher killed Pooler prior to enactment of the Federal Death Penalty Act. Nor are we troubled that we are usurping the role of the popularly elected branches. As we discussed above, broad elimination of the death penalty does not shift the legislative assessment of the seriousness of individual offenses. *See also United States v. Workinger*, 90 F.3d 1409, 1419 (9th Cir. 1996) (Kozinski, J., concurring in part and concurring in judgment) (noting that when a statute of limitations is at issue "there's no concern

. . . that a court will render criminal what the legislature meant to remain legal"); *United States v. Caldwell*, 859 F.2d 805, 807 (9th Cir. 1988) (discussing policy rationales for criminal statutes of limitations).

## IV.

**[5]** Although precedent arising from the *Furman* moratorium guides us to apply the unlimited statute of limitations, we must still grapple with the interpretive presumption that any ambiguity should be resolved in favor of Native American sovereignty. As we noted above, the Major Crimes Act — like all federal statutes — must be interpreted to minimize infringement on the sovereignty of Native American tribes. However, this canon of construction favors only the tribal government; it does not require statutory interpretation favorable to individual Indian criminal defendants. *See Negonsott v. Samuels*, 507 U.S. 99, 110 (1993).

**[6]** If we were to limit the federal statute of limitations for murder to five years when a tribe has not opted to permit imposition of the death penalty against its members under the Federal Death Penalty Act, we would in fact be limiting sovereignty by burdening the choice created by the Act. "[T]here is typically no statute of limitations for first-degree murder — for the obvious reason that it would be intolerable to let a cold-blooded murderer escape justice through the mere passage of time . . . ." *United States v. Quinones*, 196 F. Supp. 2d 416, 418 (S.D.N.Y. 2002), *rev'd on other grounds*, 313 F.3d 49 (2d Cir. 2002); *see also Story v. State*, 721 P.2d 1020, 1026-27 (Wyo. 1986) (stating that no state has adopted a limitations period for murder). If the statute of limitations for murder were to shorten so dramatically as a consequence of a tribe's decision not to reinstate the death penalty, tribal governments would be forced to choose between capital punishment — to which they may have religious or political objections — and justice for the most heinous of crimes. Respect for tribal sovereignty counsels us to permit tribal

governments to choose whether to allow capital punishment independently of the applicable statute of limitations.

Nor would tribal prosecution serve as an adequate alternative after expiration of a five-year federal statute of limitations. Although "the tribes retain jurisdiction over crimes within the Major Crimes Act," *Wetsit v. Stafne*, 44 F.3d 823, 825 (9th Cir. 1995), under the Indian Civil Rights Act "tribal courts may not impose punishment greater than a year's imprisonment or a $5,000 fine, or both." *United States v. Bruce*, 394 F.3d 1215, 1220-21 (9th Cir. 2005) (citing 25 U.S.C. § 1302(7)). This restriction is a mildly expanded version of "the federal statutory definition of a petty offense," *Cohen's Handbook of Federal Indian Law*, § 14.04[2], at 954 (2005 ed.), and renders tribal prosecution inadequate by definition to address serious crimes, let alone first degree murder.

**[7]** There is an additional policy rationale against use of a five year statute of limitations. Given that states do not establish a limitations period for prosecution of first degree murder, use of a short statute of limitations for murder subject to prosecution under the Major Crimes Act would undermine federal efforts to harmonize criminal justice on reservations with criminal justice in the states. Although a shorter statute of limitations would benefit criminal defendants, unlike other procedural differences between capital and noncapital prosecutions, it would generate unique injustice for Indian victims.

## CONCLUSION

The Federal Death Penalty Act eliminates the availability of capital punishment in certain circumstances, but first degree murder remains an offense punishable by death. The district court's July 24, 2008 order denying Gallaher's motion to dismiss the superseding indictment is affirmed.

**AFFIRMED.**

TASHIMA, Circuit Judge, dissenting:

I agree with the majority that deference to Native American sovereignty should be the guiding principle of our inquiry. I respectfully disagree, however, that the majority's interpretation of the Federal Death Penalty Act of 1994, 18 U.S.C. § 3598, is appropriately deferential to "Indian nations . . . as governments." 137 Cong. Rec. at S8490 (Statement of Sen. Inouye).

In my view, the Federal Death Penalty Act removes first degree murder committed within the boundaries of "Indian country" from the realm of offenses punishable by death and delegates to the tribes the authority to determine the availability of the death penalty. *See* 18 U.S.C. § 3598. The Confederated Tribes of the Colville Reservation has not elected to make the death penalty available for first degree murder on the Colville Reservation. Thus, capital punishment has been clearly eliminated for the crime for which Gallaher was indicted. Because Gallaher has not been indicted for an "offense punishable by death," *see* 18 U.S.C. § 3281, the five-year statute of limitations applies, *see* 18 U.S.C. § 3282.

The majority relies on the line of cases following *Furman v. Georgia*, 408 U.S. 238 (1972), but *Furman* did not involve interpreting an Act of Congress, like the Federal Death Penalty Act, delegating to another government the decision of whether to invoke the death penalty. The majority's interpretation does not give full scope to that delegation. For this reason, I would reverse the district court's order denying Gallaher's motion to dismiss the superseding indictment.

I respectfully dissent.