**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

v.

RICHARD EARL JAENSCH,

      *Defendant-Appellant.*

No. 10-5013

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, Senior District Judge.
(1:09-cr-00284-TSE-1)

Argued: September 23, 2011

Decided: December 29, 2011

Before AGEE and WYNN, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Affirmed by published opinion. Judge Wynn wrote the opinion, in which Judge Agee and Senior Judge Hamilton concurred.

---

## COUNSEL

**ARGUED:** Alan J. Cilman, Fairfax, Virginia; Marvin David Miller, Alexandria, Virginia, for Appellant. Gregory P. Bailey, OFFICE OF THE UNITED STATES ATTORNEY,

Alexandria, Virginia, for Appellee. **ON BRIEF:** Neil H. Mac-Bride, United States Attorney, Timothy Belevetz, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

---

**OPINION**

WYNN, Circuit Judge:

A jury convicted Richard Earl Jaensch of producing a false identification document that appeared to be issued by or under the authority of the United States government in violation of 18 U.S.C. § 1028(a)(1). The identification document ("ID") identified Jaensch as a diplomat, and Jaensch successfully used this ID for several years to identify himself to, among others, court personnel and officers working for the Transportation Security Administration ("TSA").

On appeal, Jaensch argues that: (1) 18 U.S.C. § 1028(a)(1) is unconstitutionally vague because people of ordinary intelligence do not have sufficient notice of what IDs "appear to be" government-issued; (2) the district court erroneously instructed the jury to use a "reasonable person standard" to determine whether the ID "appeared to be" government-issued; (3) the Government produced insufficient evidence to sustain his conviction during a first trial that concluded in a hung jury and a mistrial; and (4) the indictment was defective by failing to separately charge him with "aiding and abetting" in violation of 18 U.S.C. § 2(b). We disagree and affirm the judgment of the district court.

I.

On June 25, 2009, a grand jury indicted Jaensch for producing a false identification document in violation of 18 U.S.C. § 1028(a)(1) ("Count 1") and transferring a false identification document in violation of 18 U.S.C. § 1028(a)(2) ("Count 2").

At Jaensch's first trial, which commenced on October 28, 2009, Troy Hughes, a courtroom deputy in the Circuit Court of Fairfax County, Virginia, testified that on April 18, 2008, when Jaensch appeared in court for an unrelated state civil matter, Jaensch identified himself by presenting a laminated ID showing his picture. The ID stated that Jaensch was a "Head of State-Diplomat" and that "[t]he man pictured, with signature, is to be Provided All Rights and Privileges according to the Vienna Treaties Convention on Diplomatic Relations of April 18, 1961."[1] J.A. 128, 437.[2] The words "not subject to delay" appeared beneath Jaensch's photograph. J.A. 129. The ID's header stated "United States of America," with the Great Seal of the United States in the ID's background. J.A. 437. The ID also included physical descriptors consistent with Jaensch's appearance and Jaensch's signature in blue ink. On its reverse side, the ID stated:

> This claim of Absolute Sovereignty (Head of State) in the United States of America is well founded and established. In it's [sic] attending documents, consisting of the Act of State Public Document of the United States of America that has been both domestically and Internationally authenticated, certified, and registered by both the Foreign Minister of the United States of America and the Secretary General of the United Nations.

J.A. 438.

At the first trial, the Government also introduced evidence from multiple interviews of Jaensch conducted during the State Department's investigation into Jaensch's possession of

---

[1]Though there is no "Vienna Treaties Convention on Diplomatic Relations," there is the similarly named "Vienna Convention on Diplomatic Relations," which was adopted on April 18, 1961.

[2]Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

the ID. During these interviews, Jaensch admitted to successfully using his ID with TSA agents to pass through airport security and board flights. When asked to explain why TSA agents would accept his ID as authentic, Jaensch responded that the TSA agents "never ask" and that "they probably assume that I work for the government." J.A. 450. Jaensch conceded to investigators that the ID "looks official." J.A. 451. Jaensch further noted that "if I told them I'm a plumber . . . [i]t would just raise eyebrows [and] all I want[ed] to do [was to] get on a plane." J.A. 450. During the interviews, Jaensch revealed that he had ordered the ID from a company in Florida.

The Government also presented testimony from Holly Coffey, the deputy assistant chief of protocol for diplomatic affairs for the U.S. Department of State. She testified as an expert regarding diplomatic IDs issued by the U.S. Department of State and the privileges and immunities associated with diplomatic status. Coffey testified that Jaensch's ID was not authentic and had not been issued under the authority of the State Department; indeed, Coffey testified that "almost everything about [Jaensch's ID] is wrong." J.A. 122. For instance, Coffey testified that the ID was the wrong size and color and that it lacked information required by the State Department, such as a personal identification number.

The Government also introduced evidence establishing that Jaensch's ID was manufactured by Maxsell Corporation, a Florida company. Vico Confino, Maxsell's president, testified that while his company does business with law enforcement agencies, it also fills ID orders placed over the Internet by private individuals. Through Confino, the Government introduced the purchase order for Jaensch's ID.[3] The document

---

[3]The purchase order actually pertained to an identical replacement ID sold to Jaensch after his original ID was confiscated. But no issue is presented in this appeal regarding that fact.

indicated that the ID was sold and shipped to "Richard Jaensch" in Annandale, Virginia. J.A. 65.

On November 2, 2009, the jury returned a not guilty verdict on Count 2, illegally transferring a false identification document. Following two more days of deliberation on Count 1, illegally producing a false identification document, the district court declared a mistrial because the jury was unable to reach a verdict. On November 17, 2009, Jaensch filed a motion for judgment of acquittal as to Count 1, asserting that the Government adduced insufficient evidence to establish venue or to sustain a conviction and that the statute, 18 U.S.C. § 1028(a)(1), was unconstitutionally vague as applied. The district court denied that motion on January 6, 2010. *United States v. Jaensch*, 678 F. Supp. 2d 421, 433 (E.D. Va. 2010).

At Jaensch's retrial on Count 1 in April 2010, the Government presented essentially the same evidence as that presented in the first trial. On April 29, 2010, the jury convicted Jaensch of violating 18 U.S.C. § 1028(a)(1). Jaensch again filed a motion for judgment of acquittal. By an order dated July 13, 2010, the district court denied the motion, fined Jaensch $750, and sentenced him to one year of supervised probation. Jaensch appealed.

## II.

### A.

On appeal, Jaensch first argues that 18 U.S.C. § 1028(a)(1) is unconstitutionally vague because people of ordinary intelligence do not have sufficient notice of which IDs "appear to be" government-issued. To determine whether this statute is unconstitutionally vague, our review on appeal is de novo. *United States v. Williams*, 364 F.3d 556, 559 (4th Cir. 2004) (citation omitted).

"A statute is impermissibly vague if it either (1) 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits' or (2) 'authorizes or even encourages arbitrary and discriminatory enforcement.'" *Giovani Carandola, Ltd. v. Fox*, 470 F.3d 1074, 1079 (4th Cir. 2006) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). "We consider whether a statute is vague as applied to the particular facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2718-19 (2010) (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)). Further, "vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988) (citations omitted).[4]

---

[4]Jaensch unpersuasively argues that his vagueness challenge implicates First Amendment interests. The basis for Jaensch's contention is that, as a prerequisite to acquiring an ID from Maxsell, Jaensch produced a document with an apostille issued by the Secretary of State of Kansas. An apostille is "a standard certification provided under the Hague Convention for authenticating documents used in foreign countries." Black's Law Dictionary 112 (9th ed. 2009). The apostille in question was based upon a document Jaensch executed entitled a "Declaration of Standing and Identity[.]" J.A. 442-43. That document asserted that Jaensch was not subject to the authority of the government of Virginia or the United States because he was making the declaration "pursuant to [his] absolute freedom of religion, of an Ambassador on a Mission and Subject of the Kingdom of Heaven under its King, Christ[.]" J.A. 442. Although Jaensch's ID did not reference this declaration, Jaensch nonetheless contends that the production of his ID was an expression of his religious beliefs and, as a consequence, his First Amendment interests are implicated by application of 18 U.S.C. § 1028(a)(1).

In an unpublished opinion, this Court rejected a similar argument. *See United States v. Cline*, 286 F. App'x 817, 820 (4th Cir. 2008) (unpublished) (rejecting defendant's freedom of association argument because the statute, 18 U.S.C. § 1028(a)(8), which prohibited trafficking in false authentication features, only prohibited such trafficking for use in a false

Under the statute at issue in this matter, 18 U.S.C. § 1028(a)(1), it is a crime to "knowingly and without lawful authority produce[] an identification document, authentication feature, or a false identification document[,]" but only "in a circumstance described in subsection (c) of [18 U.S.C. § 1028]." Subsection (c) states that the production of an ID is a criminal act if the "false identification document is or *appears to be* issued under the authority of the United States . . . ." 18 U.S.C. § 1028(c)(1) (emphasis added).

Jaensch argues that the statute is vague because: (1) it does not provide any definition for "appears to be"; and (2) it fails to state to whom, an expert or a layman, a document would appear to be issued by or under the authority of the United States. In essence, Jaensch's vagueness argument boils down to notice; his contention is that no one can know what "appears to be" issued by the government and, therefore, no one can know what conduct is prohibited.

The Supreme Court "has long recognized that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea*." *Colautti v. Franklin*, 439 U.S. 379, 395 (1979); *accord Hoffman Estates*, 455 U.S. at 499 (1982) ("[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." (footnote omitted)); *United States v. Klecker*, 348 F.3d 69, 71 (4th Cir. 2003) ("[An] intent requirement alone tends to defeat any vagueness challenge based on the potential for arbitrary enforcement." (citation omitted)); *United States v. Gilliam*, 975 F.2d 1050, 1056 (4th Cir. 1992)

identification document that "appears to be" government-issued). Similarly, in this case, the statute Jaensch challenges applies only to the production of IDs that "appear to be" government-issued. As the statute does not prohibit religious expression in IDs, provided they do not "appear to be" government-issued, as in *Cline*, this case does not implicate First Amendment interests.

(holding that a defendant "must have had notice that the conduct [was] proscribed in order to have [had] the specific intent required for the money laundering crime" (citations omitted)).

Here, the Government needed to prove beyond a reasonable doubt that Jaensch "knowingly and without lawful authority produce[d] . . . a false identification document[.]" 18 U.S.C. § 1028(a)(1). A "false identification document" is specifically defined by the statute as "a document . . . not issued by or under the authority of a governmental entity" but that "appears to be issued by or under the authority of the United States Government . . . ." *Id.* at § 1028(d)(4). Consequently, the United States was required to prove beyond a reasonable doubt that Jaensch *knowingly* produced an identification document that *appeared to be* issued by or under the authority of the United States Government.

Given that Section 1028(a)(1) has a scienter requirement specifically requiring the Government to prove beyond a reasonable doubt that Jaensch *knew* that the ID *appeared to be* issued by or under the authority of the United States Government, this scienter requirement alone tends to defeat Jaensch's vagueness challenge. *See Klecker*, 348 F.3d at 71; *Gilliam*, 975 F.2d at 1056. Further, Jaensch's own statements to investigators revealed that Jaensch clearly understood that his ID "appeared to be" government-issued. Jaensch admitted to investigators that TSA agents, after having viewed his ID, "probably assume that I work for the government." J.A. 450. And Jaensch conceded that his ID "looks official[.]" J.A. 451.We, therefore, must hold that Jaensch has failed to establish that 18 U.S.C. § 1028(a)(1), as applied, is unconstitutionally vague.

B.

Jaensch next contends that the district court erroneously instructed the jury to use a "reasonable person standard" to determine whether his ID "appeared to be" government-

issued. Specifically, Jaensch argues that the district court's instruction for the jury to use a "reasonable person standard" to determine whether Jaensch's ID "appeared to be" government-issued diminished the *mens rea* requirement of "knowingly" under 18 U.S.C. § 1028(a)(1). We disagree.

We begin our review of this issue by examining whether the jury instructions, construed as a whole, "adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the [defendant]." *Spell v. McDaniel*, 824 F.2d 1380, 1395 (4th Cir. 1987) (citation omitted). And even if review reveals error in the jury instructions, we will reverse the judgment "only if the error is determined to have been prejudicial, based on a review of the record as a whole." *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 775 (4th Cir. 1997) (internal quotation marks and citations omitted).

Here, the district court instructed the jury that, to find Jaensch guilty of violating Section 1028(a)(1), it "must find that the government has proved . . . beyond a reasonable doubt. . . . [Jaensch] knowingly produced a false identification document, knowing at the time of production that the document was a false identification document." J.A. 408. Under Section 1028(d)(4), a "false identification document" is "a document . . . not issued by or under the authority of a governmental entity" but that "appears to be issued by or under the authority of the United States Government . . . ." 18 U.S.C. § 1028(d)(4). Following this statutory definition, the district court instructed the jury on how it should determine whether the ID produced by Jaensch was a "false identification document," by stating that:

> An identification document not issued by or under the authority of the United States Government appears to be issued by or under the authority of the United States Government when a reasonable person of ordinary intelligence would believe that it was

issued by or under the authority of the United States Government.

J.A. 410.

Critically, this instruction did not alter the Government's burden to establish beyond a reasonable doubt that Jaensch "knowingly and without lawful authority produce[d] . . . a false identification document[.]"[5] 18 U.S.C. § 1028(a)(1). Indeed, the district court's jury instruction properly refined this burden by requiring the Government to prove beyond a reasonable doubt that Jaensch knowingly produced an identification document that, although not issued by or under the authority of the United States Government, nonetheless appeared to a reasonable person of ordinary intelligence to be issued by or under the authority of the United States Government. Accordingly, we find no merit in Jaensch's argument that the district court's "reasonable person" standard diminished the *mens rea* requirement of "knowingly" under 18 U.S.C. § 1028(a)(1).

Jaensch also argues that the district court's "reasonable person of ordinary intelligence" instruction impermissibly "permitted criminal conviction [of Jaensch to be] dependent upon what the jury believe[d] another person, wholly ignorant of the subject matter, would think" as to whether the ID "appeared to be" issued by or under the authority of the United States Government. Appellant's Reply Br. at 15. Although

---

[5]As discussed above in Part II.A, this requirement, namely that Jaensch "knew" the document was a false identification document, required (as a result of the definition of "false identification document" supplied by 18 U.S.C. § 1028(d)(4)) that the Government prove beyond a reasonable doubt that Jaensch knew the ID appeared to be issued by or under the authority of the United States Government. The jury instruction discussed in this section only clarified that the relevant appearance of the ID (i.e., appearing as if issued by or under the authority of the United States Government) should be determined by the jury by reference to what a reasonable person of ordinary intelligence would believe when viewing the ID.

Jaensch concedes that a "reasonable person" standard is appropriate in many contexts, such as in a jury's determination of ordinary negligence, Jaensch argues that "[d]iplomatic identifications are not within common knowledge[]" and, consequently, "[t]he reasonable person standard . . . provided no measure by which to decide whether the cut and paste identification, which declared that Jaensch was the 'Head of State' of the United States of America" was an ID in violation of Section 1028(a)(1). Appellant's Br. at 30. According to Jaensch, the correct standard in determining whether the ID appeared to be government-issued was that of a reasonable person of expert familiarity with IDs issued by the State Department.

Jaensch's argument relies heavily on the Government's introduction of Coffey's expert testimony. In reviewing Jaensch's ID, Coffey testified that "almost everything about [Jaensch's ID] is wrong. . . . [I]t's the wrong size. It doesn't have the correct information on it. . . . [I]t is not a legitimate ID card." J.A. 122. Coffey testified to further discrepancies in Jaensch's ID, including, for example, its reference to the "Vienna Treaties Convention on Diplomatic Relations"—which does not exist in that name.

According to Jaensch, this and other Government evidence demonstrated that to law enforcement personnel with any training in diplomatic identification cards, Jaensch's ID would not have "appeared to have been" government-issued. Consequently, Jaensch argues the "reasonable person of ordinary intelligence" standard was erroneous because it required the jury to reject the testimony of expert witnesses who testified, without contradiction, that Jaensch's ID looked nothing like a government-issued identification.

We first observe that Jaensch's reliance on this evidence is misplaced. The Government was required to prove beyond a reasonable doubt that "when [Jaensch] produced a false identification document, [Jaensch] did so without lawful author-

ity." J.A. 408; *see also* 18 U.S.C. §§ 1028(a)(1), (d)(4). Accordingly, the Government offered Coffey's testimony to establish that Jaensch's ID was "not issued by or under the authority of a governmental entity[,]" *id.* at § 1028(d)(4)(A), an element of the offense under Section 1028(a)(1) that the Government was required to prove beyond a reasonable doubt.

Secondly, Jaensch's own statements to investigators reveal that TSA agents, with at least some training and experience in reviewing government-issued IDs, appear to have accepted Jaensch's ID as government-issued. Again, Jaensch admitted to investigators that TSA agents, after having viewed his ID, "probably assume that I work for the government." J.A. 450. Jaensch conceded to investigators that his ID "looks offi-cial[.]" J.A. 451.

Thirdly, under the plain language of Section 1028(a)(1), the form of identification that Jaensch produced is not at issue as the statute is not limited to prohibiting false identification documents with a high production value meant to deceive only the most discerning of observers. Rather, given that IDs are commonly used for purposes of identification in varied circumstances, including to cashiers and other "reasonable persons" with no particular expertise in diplomatic creden-tials, we hold that a reasonable person standard was an appro-priate instruction for the district court to give to the jury. *See* discussion *infra* at 15-16 (quoting *United States v. Fuller*, 531 F.3d 1020, 1025 (9th Cir. 2008), to observe that "[a]ll sorts of documents can appear to be made by or under the authority of the United States," regardless of how accurately the ID rep-licates an official, authentic government ID).

## C.

Jaensch next contends that, at the close of his first trial, the district court erroneously denied his motion under Rule 29 of the Federal Rules of Criminal Procedure for a judgment of

acquittal on the basis that the Government's evidence was insufficient to sustain a conviction under 18 U.S.C. § 1028(a)(1). We disagree.

"We review de novo the district court's denial of a motion for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure." *United States v. Green*, 599 F.3d 360, 367 (4th Cir.), *cert. denied*, 131 S. Ct. 271 (2010) (citation omitted). "'[A]ppellate reversal on grounds of insufficient evidence . . . will be confined to cases where the prosecution's failure is clear.'" *Id.* (quoting *Burks v. United States*, 437 U.S. 1, 17 (1978)). "We review the sufficiency of the evidence to support a conviction by determining whether there is substantial evidence in the record, when viewed in the light most favorable to the government, to support the conviction." *United States v. Madrigal–Valadez*, 561 F.3d 370, 374 (4th Cir. 2009) (internal quotation marks and citation omitted). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc) (citation omitted). "In determining whether the evidence was sufficient . . . a reviewing court must determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Madrigal–Valadez*, 561 F.3d at 374 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

1.

As an initial matter, Jaensch contends the district court erred in reviewing the evidence in the light most favorable to the Government because "the prosecution is not the prevailing party" where the jury declared a mistrial. Although Jaensch cites no authority in support of his argument, he nonetheless contends the presumption of innocence afforded to individuals who have not been convicted should have applied, making

the appropriate standard to view the evidence in the light most favorable to Jaensch. We disagree.

This issue has not been specifically considered by this Circuit. However, other Circuit Courts of Appeals have specifically applied the usual standard when examining whether a Rule 29 motion for judgment of acquittal is appropriate following a mistrial. In *United States v. Cooper*, for example, the Eleventh Circuit examined whether "the evidence at appellant's first trial, when examined in the light most favorable to the government, would have supported a conviction" when "the trial judge declared a mistrial" in the first trial. 733 F.2d 91, 92 (11th Cir. 1984); *see also United States v. Davis*, 981 F.2d 906, 910 (6th Cir. 1992) (same). Likewise, we hold that the standard of review for a motion for judgment of acquittal following a mistrial is no different than it would be following a jury conviction, and the evidence should, therefore, be viewed in the light most favorable to the Government.

2.

To further support his contention that the district court erroneously denied his motion for judgment of acquittal after the first trial under Rule 29, Jaensch next argues that his ID did not "appear to be" issued by the United States as required by 18 U.S.C. §§ 1028(a)(1), (c)(1), (d)(4)(B). Again, Jaensch's argument relies heavily on Coffey's expert testimony that, for myriad reasons obvious to her, Jaensch's ID was "not a legitimate ID card." J.A. 122. However, the fact "[t]hat there were some differences between [Jaensch's ID] and [a] genuine [ID] sufficient to enable an expert to distinguish between them clearly does not undermine [the jury's] finding." *See United States v. Fera*, 616 F.2d 590, 598 (1st Cir. 1980) (holding that, notwithstanding expert testimony to the contrary, the record contained substantial evidence to support the jury's finding that the counterfeit currency notes passed by the defendant sufficiently resembled genuine currency "to deceive an honest, sensible and unsuspecting person of ordi-

nary observation and care . . . ." (internal quotation marks and citation omitted)). And Jaensch himself conceded that the ID "looks official[.]" J.A. 451.

Additionally, Jaensch argues that the case "should never have gone to a retrial[]" because his "monopoly money ID and its cut and paste photograph was, clearly, not a counterfeit government ID and did not appear to be an ID issued by the Department of State." Appellant's Br. at 44. Notably, we are persuaded by the Ninth Circuit's handling of a similar argument in *United States v. Fuller*, 531 F.3d 1020 (9th Cir. 2008), *cert. denied*, 129 S. Ct. 1603 (2009).

In that case, the defendant presented an ID stating that he was a Commander in the "United States Special Response Department Anti–Terrorism Unit" and told police that the Department was part of the State Department. *Id.* at 1023. The Ninth Circuit held that Fuller's ID, although referencing a nonexistent agency, still "appeared" to be issued by a federal agency. According to the *Fuller* court:

> All sorts of documents can appear to be made by or under the authority of the United States even though they purport to be documents produced by an agency that turns out to be nonexistent. An identification badge or card which states that the holder is a judge on the United States Court of Appeals for the Twelfth Circuit could appear to be made by or issued under the authority of the United States even though the Twelfth Circuit does not exist. . . . The statute requires that the document *appear* to be made by or issued under the authority of the United States; it does not require that the document actually be made by or under the authority of the United States.

*Id.* at 1025-26 (emphasis in original). In other words, the inquiry is not whether Jaensch's ID accurately replicated the official State Department diplomatic ID; the question is

whether the ID appeared to be issued by or under the authority of the government of the United States.

To that end, prominently across the top of Jaensch's ID, in large gold letters, were the words "United States of America," with the words "Head of State–Diplomat" underneath. J.A. 433. The ID also bore a watermark background of the Great Seal of the United States. It claimed that Jaensch was "not subject to delay," and was "to be Provided All Rights and Privileges according to the Vienna Treaties Convention on Diplomatic Relations of April 18, 1961." J.A. 433. Next to Jaensch's photo were the words "Not Valid Without Photo," giving the impression of an official document that must possess certain features.

Further, the Government's evidence went well beyond the face of the ID itself. Jaensch admitted that his ID "looks official[.]" J.A. 451. When presenting the ID to TSA agents "four to five times," Jaensch was allowed to board flights and later stated to investigators that "in Washington, DC, [the TSA agents] probably assume I work for the government." J.A. 450-51. Accordingly, viewing the evidence in the light most favorable to the Government, we hold that the Government presented ample evidence to support a reasonable juror's finding that Jaensch's ID appeared to be issued by or under the authority of the United States government.

3.

Jaensch also argues, in support of his contention that the district court erroneously denied his motion for judgment of acquittal, that the Government did not present sufficient evidence that he produced the ID. We disagree.

The term "produce" is defined in the statute to include acts that "alter, authenticate, or assemble[.]" 18 U.S.C. § 1028(d)(9). Notwithstanding Jaensch's arguments to the contrary, the Government's evidence showed that Jaensch

was involved in the physical assembly of the ID. For example, Confino, Maxsell's president, testified that his business practice was not to laminate cards that contained unsigned signature lines. This business practice, according to Confino, allowed customers to finish the ID production process themselves by adding their signature and then laminating their IDs. Because Jaensch's ID contained Jaensch's signature, jurors could reasonably infer that Jaensch both signed and laminated his ID after it was shipped to his home address—acts of "production" under the statutory definition. *See* 18 U.S.C. § 1028(d)(9). Moreover, even if Maxsell had, for example, laminated the ID, it is far from clear that would provide Jaensch with any protection from conviction. *See United States v. Rashwan*, 328 F.3d 160, 165 (4th Cir. 2003) (stating that a defendant "cannot insulate himself from punishment by manipulating innocent third parties to perform acts on his behalf that would be illegal if he performed them himself," and, consequently, concluding that "[w]hether or not [defendant] physically produced the false documents himself is irrelevant to his conviction"). In any case, evidence of Jaensch's actual, physical assembly of the ID established grounds for a rational trier of fact to find beyond a reasonable doubt that he "produced" the document in violation of 18 U.S.C. § 1028(a)(1).

4.

Finally, in support of his contention that the district court erroneously denied his motion for judgment of acquittal, Jaensch contends that the Government did not present sufficient evidence that venue in the Eastern District of Virginia was proper. According to Jaensch, there was no evidence of who placed the order for the ID, who paid for the order, or where the individual who placed the ID order was located when the order was placed.

Proper venue in a criminal case is a constitutional right secured by Article III, Section 2 and by the Sixth Amendment

of the United States Constitution. *United States v. Bowens*, 224 F.3d 302, 308 (4th Cir. 2000). Venue is proper "in a district where the offense was committed." Fed. R. Crim. P. 18. The district where venue is appropriate "must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Cabrales*, 524 U.S. 1, 6-7 (1998) (quotation marks, citation and alterations omitted). Venue must be proved by a preponderance of the evidence. *United States v. Ebersole*, 411 F.3d 517, 524 (4th Cir. 2004).

Here, the Government presented sufficient evidence from which a rational trier of fact could reasonably conclude that Jaensch: ordered the ID from and received the ID within the Eastern District of Virginia;[6] applied his signature to the ID within the Eastern District of Virginia; and laminated the ID after signing it within the Eastern District of Virginia. Any one of those acts alone is sufficient evidence, when drawing all inferences in favor of the Government, to establish by a preponderance of the evidence that venue was proper in the Eastern District of Virginia.

### D.

In his final argument on appeal, Jaensch contends that the indictment's omission of 18 U.S.C. § 2(b) was fatal and, consequently, requires this Court to vacate his conviction.

Under 18 U.S.C. § 2(b), individuals who aid, abet, command, or induce a crime are punishable as principals. This Court, however, has previously considered and rejected this precise argument—that 18 U.S.C. § 2(b) must be separately charged in an indictment. *See United States v. Ashley*, 606 F.3d 135, 143 (4th Cir.), *cert. denied*, 131 S. Ct. 428 (2010) ("Because the aiding and abetting provision [in 18 U.S.C.

---

[6]The Government's evidence showed that the ID was shipped to Jaensch's residence in Annandale, Virginia.

§ 2(b)] does not set forth an essential element of the offense with which the defendant is charged or itself create a separate offense, aiding and abetting liability need not be charged in an indictment." (citation omitted)). In light of our resolution of this argument in *Ashley*, we hold that Jaensch's argument is without merit.

## III.

In sum, we conclude that: (1) as applied to Jaensch, 18 U.S.C. § 1028(a)(1) is not unconstitutionally vague; (2) the district court properly instructed the jury to use a "reasonable person standard" to determine whether Jaensch's ID "appeared to be" government-issued; (3) the Government produced sufficient evidence that Jaensch's ID appeared to be government-issued, that Jaensch produced the ID, and that venue was proper, such that the district court properly denied Jaensch's motion for judgment of acquittal; and (4) it was not necessary to charge Jaensch with "aiding and abetting" in violation of 18 U.S.C. § 2(b).

Accordingly, we affirm the judgment below.

*AFFIRMED*