**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 12-4891**

─────────────

UNITED STATES OF AMERICA,

                    Plaintiff-Appellee,

          v.

HAROLD A. HABECK, II,

                    Defendant-Appellant.

─────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. John A. Gibney, Jr., District Judge. (3:12-cr-00075-JAG-1)

─────────────

Submitted:   June 5, 2013          Decided:   June 24, 2013

─────────────

Before WILKINSON, KING, and GREGORY, Circuit Judges.

─────────────

Affirmed by unpublished per curiam opinion.

─────────────

Michael S. Nachmanoff, Federal Public Defender, Alexandria, Virginia; Nia A. Vidal, Assistant Federal Public Defender, Patrick L. Bryant, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Richmond, Virginia, for Appellant. Neil H. MacBride, United States Attorney, Alexandria, Virginia; Michael A. Jagels, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Harold A. Habeck, II, appeals from his conviction by a jury for possessing a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c). Habeck asserts that the evidence at trial was insufficient to support the jury's verdict and that the district court erred in its instruction regarding the "in furtherance" element of the crime. For the reasons that follow, we affirm.

I.

Habeck was a resident of Richmond, Virginia, who conducted an extensive marijuana growing operation out of his home. After a month-long investigation and the arrest of one of Habeck's customers, who was seen exiting Habeck's house and who admitted to purchasing marijuana from him, police obtained a search warrant for his house.

Upon entering, police discovered that Habeck had screwed shut all of the windows and all of the doors except the one through which they had entered. Habeck was subsequently given Miranda warnings and interviewed. He informed the officers that he was growing "top-end weed" for sale, J.A. 57, and identified the locations of three firearms in the house. He also admitted that he had screwed the doors and windows closed because he was "paranoid that somebody may try to rob" him. J.A. 56.

2

Police then conducted a search of Habeck's house. They discovered 397 marijuana plants, along with fertilizer, watering tools, power converters, lights, an elaborate ventilation system, and other accessories related to growing high-grade marijuana. Habeck's product was high-grade in that it sold for between 10 and 20 times more than ordinary marijuana.

In addition to the drug paraphernalia, investigators also found the three firearms Habeck had identified: one semiautomatic handgun, one revolver, and one shotgun. The handgun was hidden behind a television set in the lower story den, the revolver was hidden behind a television set in Habeck's bedroom, and the shotgun was behind several golf clubs in the dining room. All three weapons were loaded when they were discovered. Neither the handgun nor the revolver had safety features; both were primed to fire with a single pull of the trigger. Furthermore, the handgun was loaded with "hollow point" bullets, which are anti-personnel rounds that cause more harm to humans than normal ammunition.

As a result of the investigation, Habeck was charged with one count of knowingly possessing with intent to distribute one hundred or more marijuana plants in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and one count of possession of firearms in furtherance of the drug trafficking offense in violation of 18 U.S.C. § 924(c). Habeck pleaded guilty to the

first count, but elected to go to trial on the second count. The jury convicted him, and this appeal followed.

## II.

Habeck argues principally that there was insufficient evidence to support his conviction. This court reviews the sufficiency of evidence underlying a criminal conviction "by determining whether there is substantial evidence in the record, when viewed in the light most favorable to the government, to support the conviction." United States v. Jaensch, 665 F.3d 83, 93 (4th Cir. 2011) (internal quotation marks omitted). We will decline to overturn a jury verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Dinkins, 691 F.3d 358, 387 (4th Cir. 2012) (internal quotation marks omitted).

In order to convict Habeck, the jury was required to determine that he had possessed a firearm in furtherance of a drug trafficking crime. This court held in United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002), that whether or not a firearm is used "in furtherance" of a crime is "ultimately a factual question" entrusted to the fact-finder. We noted in Lomax several factors that a jury might consider in deciding whether there was a connection between the possession of a firearm and a drug trafficking crime. These included, inter alia, "the type of drug activity that is being conducted,

4

accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." Id. (internal quotation marks omitted).

In light of these factors, sufficient evidence was adduced at trial to sustain the conviction. Habeck admitted that he grew and sold high-grade marijuana as well as owned firearms. Unrebutted testimony at trial established that three firearms were found in the same house as the drugs, concealed strategically in different places known only to Habeck. All three weapons were loaded when they were found, two were ready to fire with a single pull of the trigger, and one of those was loaded with particularly deadly "hollow point" bullets. Moreover, Habeck admitted he was "paranoid that somebody may try to rob" him, and amply demonstrated that by screwing shut every window and every door but one in the house. The jury could certainly have concluded that his apprehension stemmed from a perception that his house was an attractive target for robbers due to the presence of expensive equipment and 397 plants that were producing high-grade marijuana, and that he kept his firearms to defend his operation. When taken together and viewed in a light most favorable to the government, this evidence was sufficient for a rational jury to determine that Habeck possessed the guns in furtherance of trafficking drugs.

We find unconvincing Habeck's argument that a rational jury could determine only that the above evidence showed that he had both guns and drugs in the same house. Although the defendant offered testimony that he owned the guns for self-defense and hunting, the jury was not obligated to accept his explanation. We decline to overturn the jury on this quintessentially factual question, Lomax, 293 F.3d at 706, and it follows that the conviction rested on sufficient evidentiary support.

III.

Habeck claims that the district court erred in instructing the jury on the "in furtherance" element of 18 U.S.C. § 924(c). We review a district court's decision on whether or not "to give a jury instruction and the content of an instruction" for abuse of discretion. United States v. Ellis, 121 F.3d 908, 923 (4th Cir. 1997) (internal quotation marks omitted). We do not review an instruction in isolation, and "will not reverse provided that the instructions, taken as a whole, adequately state the controlling law." United States v. Ryan-Webster, 353 F.3d 353, 364 n.17 (4th Cir. 2003) (internal quotation marks omitted).

In this case, the district court instructed the jury regarding the "in furtherance" element as follows:

> The term "to possess a firearm in furtherance of a drug trafficking crime" means that the firearm helped forward, advance or promote the commission of the drug trafficking crime. The mere possession of a firearm at the scene of such a crime is not sufficient under

6

this definition. The government must present evidence which proves beyond a reasonable doubt that the firearm played some part in furthering the crime. In making its determination, the jury may consider the evidence as to the ways in which a firearm might be involved in committing the crime of drug trafficking. In addition, the jury may consider but is not limited to considering the type of firearm, the accessibility of the firearm, the firearm's proximity to drugs or drug profits, the circumstances under which the firearm was found, and the nature of the drug trafficking alleged in this case.

J.A. 296.

Habeck first argues that this instruction was needlessly cumulative. We disagree. It was not an abuse of discretion for the district court to provide some guidance to the jury rather than assuming that the jury would come to an accurate understanding of the law on its own. Here, the district court simply offered several relevant factors and did not imply to the jury how it should decide on those factors. It also accurately described the governing legal principles.

Second, Habeck contends that the inclusion of several of the Lomax factors in the instruction prejudiced him by focusing the jury on the government's theory of the case. However, it is far-fetched to conclude that the jury was unduly focused on the government's theory as a result of this instruction. As an initial matter, the record reveals that the district court actually adopted language proposed by Habeck almost verbatim for the first half of the instruction. The instruction explained that the "in furtherance" element "means that the firearm helped

7

forward, advance or promote the commission of the drug trafficking crime," that "mere possession of a firearm at the scene of such a crime is not sufficient under this definition," and that the "government must present evidence which proves beyond a reasonable doubt that the firearm played some part in furthering the crime." J.A. 296. Habeck thus cannot argue that he did not have a substantial impact on the shape of the final instruction, and we are hard pressed to imagine how the addition of two sentences, which did no more than recite existing law, prejudiced him.

Moreover, the district court took great care to instruct the jury on its decisive role. It instructed the jury that "[n]othing said in these instructions . . . is to suggest or convey to you in any way or manner any intimation as to what verdict I think you should return." J.A. 299. The judge plainly preserved the primacy of the jury's fact-finding role: "What the verdict shall be is the exclusive duty and responsibility of the jury. As I have told you many times, you are the sole judges of the facts." Id.

Taken in their totality, the instructions were well within the district court's discretion. We thus affirm the judgment.

AFFIRMED