**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 13-4794**

—————————

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

TIMOTHY JAMES DONAHUE,

        Defendant - Appellant.

—————————

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Max O. Cogburn, Jr., District Judge.  (3:12-cr-00013-MOC-DCK-3)

—————————

Submitted:  March 23, 2015          Decided:  April 8, 2015

—————————

Before NIEMEYER and AGEE, Circuit Judges, and HAMILTON, Senior Circuit Judge.

—————————

Affirmed by unpublished per curiam opinion.

—————————

David G. Belser, BELSER & PARKE, Asheville, North Carolina, for Appellant.  Anne M. Tompkins, United States Attorney, William M. Miller, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.

—————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following a jury trial, Timothy James Donahue was convicted on one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (2012), and one count of Hobbs Act robbery, and aiding and abetting, in violation of 18 U.S.C. §§ 1951(a), (2) (2012). The district court sentenced Donahue to concurrent 188-month prison terms. Donahue timely appeals.

Viewed in the light most favorable to the Government, the evidence presented at trial "supports the following narrative." United States v. Reed, ___ F.3d ___, ___, 2015 WL 1037601, at *1 (4th Cir. Mar. 11, 2015). Scott Beaver owned Beaver Honda and Salvage, a business that sold cars and used auto parts all over the United States and beyond. The Beaver family home and the business shared a single address. On one side of the road were the house and the car lot, separated by a fence. Directly across the road were the salvage yard and garage. Beaver's wife, who also worked for the business, sometimes prepared paperwork and conducted telephone sales and purchases from inside the house.

Instead of putting his money in a bank, Beaver chose to keep it in a safe in his laundry room. In the evening after work, Beaver would bring the proceeds from the business into the house for storage in the safe. He estimated that he had $1.5 million in the safe. He kept the cash from his business in the

2

safe in part because he felt like it was safer there than stored in a bank or invested, and in part for convenience because he used it "for transactions."  Although the business had a checking account, occasionally Beaver would retrieve cash from inside the house to pay people who performed work for him.

Donahue met Beaver when Donahue was employed by Eric Wilson in Wilson's automobile glass business.  Wilson and Donahue performed work for Beaver, exchanging glass windshields at Beaver's car lot.  Donahue knew that Beaver kept cash from the business inside his house.  Wilson preferred being paid in cash, and often he and Donahue waited in the house or on the front porch as Beaver retrieved money to pay them for their windshield work.  Sometimes, when the two men waited in the living room, Beaver headed towards the laundry room, returning with their cash.  Donahue and Wilson occasionally discussed that Beaver was worth several million dollars, and Donahue remarked "quite a few times" about how much money Beaver kept in the safe.

Donahue conspired with others to rob Beaver's safe.  The robbery was carried out on July 21, 2011, by two of the co-conspirators.  The robbers forced Beaver, his wife, their two young daughters, Beaver's adult grandson, and Beaver's preschool-age great grandson, into the Beavers' home and demanded that Beaver show them the safe.  After Beaver opened the safe, the robbers took the cash; it took several trips to

3

carry it all to their vehicle. They began counting the money after they left the scene, but they stopped counting after $1.5 million. The funds were subsequently divided amongst the coconspirators.

Donahue first argues on appeal that the Government failed to establish a sufficient nexus to interstate commerce to support his convictions. A defendant challenging the sufficiency of the evidence faces "a heavy burden." United States v. McLean, 715 F.3d 129, 137 (4th Cir. 2013) (internal quotation marks omitted). The jury verdict must be sustained if, viewed in the light most favorable to the Government, there is substantial evidence in the record to support the convictions. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Jaensch, 665 F.3d 83, 93 (4th Cir. 2011). "Substantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Jaensch, 665 F.3d at 93 (internal quotation marks and brackets omitted). "Reversal for insufficient evidence is reserved for the rare case where the prosecution's failure is clear." United States v. Ashley, 606 F.3d 135, 138 (4th Cir. 2010) (internal quotation marks omitted).

To establish a Hobbs Act robbery, the Government must prove:

4

> (1) that the defendant coerced the victim to part with property; (2) that the coercion occurred through the wrongful use of actual or threatened force, violence or fear or under color of official right; and (3) that the coercion occurred in such a way as to affect adversely interstate commerce.

Reed, ___ F.3d at ___, 2015 WL 1037601, at *8 (quotation marks and citation omitted). Conspiracy to commit Hobbs Act robbery requires the Government to prove that the defendant agreed with at least one other person to commit acts that would satisfy the above three elements. United States v. Buffey, 899 F.2d 1402, 1403 (4th Cir. 1990). Donahue argues that the evidence was insufficient to prove the interstate commerce element of his convictions, because the money seized during the robbery had become Beaver's private funds for which there was no interstate nexus.

The jurisdictional element of the Hobbs Act requires the Government to prove merely a de minimis effect on interstate commerce. United States v. Taylor, 754 F.3d 217, 222 (4th Cir.), pet. for cert. docketed, (U.S. Sept. 9, 2014) (No. 14-6166). The fact that a robbery occurred in a private residence does not necessarily defeat the interstate nexus where the Government shows that the robbery depleted or attempted to deplete the assets of a business that affects interstate commerce or by showing that the defendant deliberately targeted a business engaged in interstate commerce. Id. at 223-26.

5

In United States v. Powell, 693 F.3d 398 (3d Cir. 2012), Powell and his accomplices robbed Asian business owners at their homes, deliberately targeting these victims based on the robbers' belief that these individuals did not use banks. Id. at 399. Powell challenged his Hobbs Act convictions, arguing that the robbery of a private residence, as opposed to a business establishment, was insufficient to establish that the robbery affected interstate commerce. Id. at 402. The Third Circuit rejected this argument, holding that where a defendant targets a home to steal proceeds from a business that engages in interstate commerce, "such targeting satisfies the Hobbs Act's jurisdictional nexus." Id. at 403; accord Taylor, 754 F.3d at 225 (holding that "evidence of the defendant's intent is not required to prove that his robberies had an impact on interstate commerce, . . . [but] . . . is still probative . . . of whether his actions would have had the 'natural consequence[]' of affecting such commerce" (last alteration in original)).

Here, Donahue does not dispute that Beaver Honda and Salvage was engaged in interstate commerce. The evidence presented at trial showed that Donahue deliberately targeted Beaver because he knew that Beaver kept the proceeds from his business in a safe in his home. Donahue contends, however, that the proceeds were no longer receipts of the business because they had become Beaver's personal savings. He argues that the

6

money used to operate the business came from its checking account. However, Donahue overlooks the evidence presented at trial that Beaver occasionally paid those who performed work for his business with cash retrieved from the safe. We conclude that the evidence was sufficient to satisfy the jurisdictional element of the Hobbs Act.

Donahue also argues that the district court abused its discretion by declining his request to instruct the jury that interstate commerce may not be involved where the robbery depletes the assets of an individual rather than a business. We review for abuse of discretion the district court's refusal to give a particular jury instruction. United States v. Shrader, 675 F.3d 300, 308 (4th Cir. 2012).

The district court's refusal to grant a requested jury instruction is reversible error only if the proffered instruction was "(1) correct; (2) not substantially covered by the court's charge; and (3) dealing with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." Id. When jury instructions are challenged on appeal, the issue is whether "the instructions, taken as a whole, adequately state the controlling law." United States v. Bolden, 325 F.3d 471, 486 (4th Cir. 2003) (internal quotation marks omitted). We have thoroughly reviewed the record and conclude

7

that the district court did not abuse its discretion in declining to give Donahue's proposed instruction.

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

<u>AFFIRMED</u>