**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 14-4946**

———————

UNITED STATES OF AMERICA,

      Plaintiff – Appellee,

   v.

PAUL STARNER,

      Defendant – Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (1:14-cr-00008-LMB-1)

———————

Submitted: July 21, 2015     Decided: August 18, 2015

———————

Before GREGORY, DUNCAN, and KEENAN, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

Peter L. Goldman, O'REILLY & MARK, P.C., Alexandria, Virginia, for Appellant. Dana J. Boente, United States Attorney, Christopher Catizone, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On September 24, 2014, a federal jury convicted Paul Starner of conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841 (a)(1) and 846. Before trial, Starner filed two motions to suppress: one concerning wiretap evidence and one concerning statements Starner made in a post-arrest interview. The district court denied both motions. Starner now appeals those denials. He also appeals his conviction, contending there was insufficient evidence for the jury to find him guilty of conspiracy to distribute cocaine. For the reasons that follow, we affirm.

I.

A.

In February 2013, as part of its investigation of a drug-trafficking organization operating in Prince William County, Virginia, the Federal Bureau of Investigation ("FBI") obtained authorization from the district court to wiretap the telephone communications of a suspected cocaine distributer. The wiretap revealed that the distributer's name was Johnnie Hill and that Hill frequently communicated with Starner. The FBI obtained four subsequent authorizations to tap Hill's phone but never tapped Starner's phone.

2

The information the FBI gathered over the wiretaps between February and June 2013, led the FBI to believe Starner was a low-level player in the conspiracy, purchasing small quantities of powder and crack cocaine to redistribute to other buyers. Starner was arrested on October 17, 2013.

Following his arrest, Starner was taken to the FBI's field office in Manassas, Virginia, where two Prince William County detectives interviewed him. The detectives testified that Starner was offered use of the restroom, and a bottle of water and a granola bar prior to his interview. They also testified that Starner was handcuffed with his hands in front of him, rather than behind his back, so that he would be more comfortable.

Before the interview, the detectives sought to obtain a written waiver of Starner's *Miranda* rights. Starner was unable to read the waiver form because he did not have his glasses, so the detectives read Starner's *Miranda* rights aloud to him. After the detectives finished reading, Starner verbally acknowledged he understood his *Miranda* rights, and signed the written waiver.

During the interview, Starner informed the detectives that he had sustained a brain injury during a car accident in the 1970s and suffered from memory loss as a result. Starner claims that because of his injury he cannot remember anything about the

3

interview, including whether he was offered food and beverage, or whether he was informed of and waived his *Miranda* rights. Starner states that he does remember, however, that the detectives informed him he could receive up to 30 years in prison if he did not answer their questions.

B.

In support of his motion to suppress the wiretap evidence, Starner argued that the affidavits the government submitted in support of its application for wiretap authorization did not satisfy 18 U.S.C. § 2518(3), which requires the government to demonstrate probable cause for a wiretap and exhaust less intrusive measures before applying for a wiretap. Starner also claimed that the government failed to minimize its interception of phone calls unrelated to the suspected criminal activity. In support of his motion to suppress his post-arrest statements, Starner argued that his *Miranda* rights waiver was involuntary.

The district court denied both motions after a hearing on September 22, 2014. The court found that the government had established probable cause to authorize the wiretap of Hill's phone and noted that Starner could not identify any investigative procedures the FBI should have, but failed to, try prior to applying for a wiretap, nor any phone calls or portions of phone calls the FBI listened to impermissibly. The court also noted that it did not find Starner's claims regarding his

4

mental state at the time of his interview to be credible and could find no evidence demonstrating police intimidation or failure to properly administer his *Miranda* rights. Thus, the district court admitted at trial evidence from the wiretaps and Starner's post-arrest interview. On September 24, 2014 after a one-day trial, the jury convicted Starner of conspiracy to distribute cocaine and cocaine base.

## II.

We turn first to Starner's contention that the district court erred in denying his motions to suppress. "We review factual findings regarding [a] motion to suppress for clear error and legal conclusions de novo." United States v. Williams, 740 F.3d 308, 311 (4th Cir. 2014). We construe the evidence in the light most favorable to the prevailing party in the district court. United States v. Foster, 634 F.3d. 243, 246 (4th Cir. 2011). Because the district court denied Starner's motions, we construe the evidence in the light most favorable to the government. In examining the sufficiency of a wiretap affidavit, "we review for abuse of discretion determinations of necessity under § 2518, United States v. Wilson, 484 F.3d 267, 280 (4th Cir. 2007), and give great deference to the issuing judge's determination of probable cause, United States v. Depew, 932 F.2d 324, 327 (4th Cir. 1991).

5

A.

Starner argues that the district court should have suppressed the evidence the government obtained from tapping Hill's telephone. Starner contends here, as he did before the district court, that the government failed to demonstrate probable cause for the wiretap, failed to exhaust less intrusive investigative measures before applying for the wiretaps, and failed to minimize its interception of phone calls unrelated to the suspected criminal activity. Starner also contends that the district court erred in failing to hold an evidentiary hearing concerning his motion to suppress. We address each contention in turn.

1.

18 U.S.C. § 2518 sets out three probable-cause requirements the government must meet before a judge may authorize the interception of a individual's telephone communications: "probable cause for belief that [the] individual is committing, has committed, or is about to commit a particular offense enumerated in [18 U.S.C. § 2516]"; "probable cause for belief that particular communications concerning that offense will be obtained through such interception"; and probable cause that the telephone to be tapped is "leased to, listed in the name of, or commonly used by [the individual]."

The government must establish such probable cause only with respect to the individual whose phone is to be tapped; not for every individual with whom the wiretap subject might exchange phone calls during the authorized period. If "recordings of [a] defendant's conversations [a]re . . . made incident to a lawful wiretap, . . . it [is] not error to allow the introduction of the taped telephone calls simply because defendant was not named in the application or order as one whose conversations would possibly be intercepted." United States v. Smith, 565 F.2d 292, 294 (4th Cir. 1977). Thus, the government's interception of telephone conversations between Hill and Starner was proper so long as the government had sufficient probable cause to tap Hill's telephone.

The district court found that the government's wiretap affidavits contained "tons of evidence" to support tapping Hill's phone, and that "any fair reading of the affidavits establishes adequate probable cause to justify" tapping Hill's telephone. J.A. 48, 50. Although Starner correctly points out that Hill was not mentioned by name in the government's initial wiretap affidavit, the wiretap statute does not require that the government identify a target individual's name. Rather, it only requires probable cause that the target individual is committing an offense, that the government will obtain information about the offense by listening to the target individual's telephone

calls, and that the telephone identified by the government does indeed belong to the target individual. Starner has offered no argument that the government failed to meet those requirements. Thus, we defer to the district court's finding that the requisite probable cause existed to justify the wiretap.

2.

Starner next argues that the government failed to exhaust normal investigative procedures before applying for the wiretap. The wiretap statute requires the government to show that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). To meet this exhaustion requirement, the government must provide more than "a mere boilerplate recitation of the difficulties of gathering usable evidence," but "the adequacy of [the government's] showing is to be tested in a practical and commonsense fashion that does not hamper unduly the investigative powers of law enforcement agents." United States v. Oriakhi, 57 F.3d 1290, 1298 (4th Cir. 1995) (quotation and alteration omitted).

Here, the government's affidavits discussed over 20 investigative tactics the government had tried prior to applying for the wiretap. Appellee's Br. at 17. Starner does not point to any alternative tactics the government could have utilized. Thus, we defer to the district court's finding that

8

the government adequately exhausted normal investigative procedures before applying for the wiretap.

3.

Starner next argues that the government did not sufficiently minimize its collection of wiretap evidence. The wiretap statute provides that wiretaps "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception . . . , and must terminate upon attainment of the authorized objective." 28 U.S.C. § 2518(5). "The wiretapping statute does not require that all innocent communications be left untouched," and "[i]n determining whether the minimization requirements of § 2518(5) have been met, courts apply a standard of reasonableness on a case-by-case basis." Oriakhi, 57 F.3d at 1300. Here, the government followed proper procedures to ensure it did not record innocent communications any more than necessary, Appellee's Br. at 18-19, and Starner fails to identify any particular telephone conversation that he believes the government intercepted improperly. Thus, he fails to establish a failure to comply with the wiretap statute's minimization requirement.

4.

Finally, Starner claims that the district court erred by failing to conduct an evidentiary hearing concerning Starner's

9

motion to suppress wiretap evidence. We have already held that the government's wiretap affidavits established sufficient probable cause to justify intercepting Hill's telephone conversations with Starner. To the extent Starner is contending that the district court should have held an evidentiary hearing concerning the accuracy of the government's statements in its wiretap affidavits, see Franks v. Delaware, 438 U.S. 154 (1978), that argument fails. In Franks, the Supreme Court held that the Fourth Amendment requires an evidentiary hearing be held at a defendant's request if the defendant has offered proof that an affidavit contains indications of deliberate falsehood or reckless disregard for the truth. 438 U.S. at 155 - 56, 171. Starner offered no such proof in the district court and has offered none here.

## B.

We turn next to Starner's argument that evidence from his post-arrest interview should be suppressed because he was mentally unable to voluntarily waive his *Miranda* rights. To determine whether a confession was given involuntarily, "[t]he proper inquiry is whether the defendant's will has been overborne or his capacity for self-determination critically impaired" by "threats, violence, implied promises, improper influence, or other coercive police activity." United States v. Holmes, 670 F.3d 586, 591 (4th Cir. 2012) (quotation omitted).

10

In thus considering, we review the totality of the circumstances, including not just whether there was coercive police activity, but also "the characteristics of the defendant, the setting of the interview, and the details of the interrogation." Id.

Here, Starner claims that he was mentally incapacitated at the time of the interview due to a brain injury he claims impairs his short- and long-term memory, and that the police coerced him by informing him that if he did not answer their questions, he could be subject to 30 years in prison. In support, he cites only his own testimony, which the district court did not find credible. See J.A. 123. Even if the police did inform Starner that he potentially faced 30 years in prison, "statements by law enforcement officers that are merely uncomfortable or create a predicament for a defendant are not ipso factor coercive." Holmes, 670 F.3d at 592–93. Further, the totality of the circumstances does not indicate police coercion. Starner was offered access to the restroom, food and beverage, and was placed in handcuffs with his arms in front of him, rather than behind his back. The police read Starner's *Miranda* rights aloud to him, and saw no indication that Starner did not comprehend their communications. Based on this record, we cannot overturn the district court's finding that Starner voluntarily waived his *Miranda* rights.

III.

We turn finally to Starner's claim that there was insufficient evidence in the record to support his conviction. We review the sufficiency of the evidence in the light most favorable to the government as well, and the jury verdict must be sustained if there is substantial evidence to support the conviction. United States v. Jaensch, 665 F.3d 83, 93 (4th Cir. 2011). In determining the sufficiency of the evidence, "we do not weigh the evidence or assess the credibility of witnesses, but assume that the jury resolved any discrepancies in favor of the government." United States v. Kelly, 510 F.3d 433, 440 (4th Cir. 2007). "Reversal for insufficient evidence is reserved for the rare case where the prosecution's failure is clear." United States v. Ashley, 606 F.3d 135, 138 (4th Cir. 2010).

"Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act." United States v. Edmonds, 679 F.3d 169, 173 (4th Cir. 2012). "To prove conspiracy, the government need not prove an explicit agreement. It may rely upon indirect evidence from which the conspiracy agreement may be inferred." Id. at 174. Such indirect evidence may include the amount of cocaine involved in the distribution, the regularity of distribution transactions, and distributions involving a credit agreement known as "fronting." Id.

12

The government presented all three examples of indirect evidence at Starner's trial. First, Starner admitted to buying over $200 of cocaine at one time, which one of the lead FBI agents on the case testified was an amount inconsistent with purely personal use. Second, transcripts of tapped calls indicate the regularity of Starner and Hill's transactions. During one call, after Starner told Hill he didn't have his "stuff" or his money, Hill told Starner "we been through this 10 times man." Later in the conversation, Hill said, "this ain't the first or second or third time you did this to me." Finally, in a separate conversation, after establishing Starner had taken some of Hill's product, Starner said, "I apologize Bush I got a hundred right now but I'll have the rest of it tomorrow or the next day," indicating Starner paid Hill on credit. In reviewing this evidence in the light most favorable to the government, we find sufficient evidence to sustain Starner's conviction.

IV.

For the foregoing reasons, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

AFFIRMED

13